J. Irwin Shapiro, J.
This is a motion by the two defendants' (James Paul Porter and Marlane Porter), appearing and moving separately, for orders suppressing the products of a search and seizure made at their apartment in Queens County on March 29, 1958, on the ground that the search was unlawful, unreasonable and in violation of the defendants’ rights, under the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and section 6 of article I of the Constitution of the State of New York and further directing an inspection of the Grand Jury minutes for the purpose of striking therefrom any testimony of the fruits of said unlawful search and seizure, and for a further order dismissing the indictment upon the ground that in the absence of the fruits of such unlawful search and seizure there was no warrant for their indictment. The motion was referred to me by reason of the self disqualification of the Justice before whom it came on to be heard.
The defendants (hereafter referred to respectively as James or Marlane), who at that time were husband and wife, were jointly indicted for an alleged violation of subdivisions 2 and 3 of section 1751 of the Penal Law, relating to the possession and sale of narcotic drugs.
The first trial in October, 1958, resulted in a disagreement. The second trial in May, 1959, resulted in a conviction of Marlane on the first count charging felonious possession and an acquittal on the second count which charged the same possession, but with *75 intent to sell. James was acquitted on the first count and convicted on the second count.
The Appellate Division, Second Department, reversed the convictions on May 21,1962 upon the ground that the trial court had improperly admitted into evidence the defendants ’ prior pleas of guilty to lesser crimes — pleas which were thereafter withdrawn (People v. Porter, 16 A D 2d 821).
The facts so far as they are material to this motion are as follows:
On March 29, 1958, Detectives Sihler, Short and Santacroce, all of the narcotic squad, had an apartment at 92 Drove Street, Manhattan, under surveillance from 1:00 a.m. to about 5:30 a.M., Detective Short having been at a rear window of that apartment all that time. At 5:30 a.m. the detectives entered the apartment and took defendants into custody. The defendants were then taken to the Charles Street station house in Manhattan.
While Marlane was being fingerprinted by the police, James picked up four bags, constituting the subject matter of the arrest, and ran through the door leading from the squad office to the men’s lavatory. When the police got there, James was at the urinal, on his hands and knees, flushing down the four paper bags. They pulled him away from the urinal, but he dove back, head first, and flushed the toilet two more times.
After the detectives got James away from the urinal he was lying on the floor claiming that his back was broken.
An ambulance was thereafter called and James was taken to St. Vincent’s Hospital for an examination.
Searching the urinal, the detectives found a public library card issued to Mrs. James P. Porter, 63-53 Haring Street, Bego Park 74, N, Y. The defendants denied that they had an apartment at that address, contending that they had sublet it to one Hartunian. Subsequently, at about 2:30 p.m., Marlane accompanied the detectives to that address. James, who had in the meantime been returned from the hospital, was asked to accompany them to the Queens apartment, but he lay on the floor and refused to do so.
The key for the apartment had been taken from the pocketbook of Marlane while she was in the station house in Manhattan (“We took it out of her purse ” — Detective Sihler, first trial). It is undisputed that the search of the premises was conducted without a search warrant and that at that time the police had no knowledge of the commission or probable commission of a felony by either of the defendants in the County of Queens. The search of the apartment, however, revealed the drugs which are the subject matter of the indictment here.
*76 The foregoing statement of facts and a further careful reading of the transcript of the testimony adduced at the first trial, which terminated in a disagreement, and the record on appeal of the second trial, which resulted in a reversal of the judgments of conviction, convince the court that there is no substantial dispute that possession of the drugs in question was obtained by an improper, unauthorized and illegal search of the Queens apartment.
In no true sense of the word was there here a consent to the entrance into the apartment. The alleged contraband which had been found in their apartment in Manhattan had been destroyed by being flushed down the toilet. As a result the corpus of the crime no longer existed. It was in this situation of having prisoners but no proof that the police found it necessary to go to the second apartment with a key taken from Marlane. The fact that Marlane accompanied eight police officers to said apartment may not, in the posture of this case, be considered as consent to the search of the apartment and the seizure made therein, but merely as a submission to overwhelming authority. Such a submission is not the consent to a search and seizure which will result in the waiver of one’s constitutional rights (Johnson v. United States, 333 U. S. 10).
The People have not here sustained the burden, which is ultimately theirs, of establishing that there was a consent given to the search made (Amos v. United States, 255 U. S. 313; Channel v. United States, 285 F. 2d 217; Judd v. United States, 190 F. 2d 649).
Since both trials took place before the decision in Mapp v. Ohio (367 U. S. 643, decided on June 19, 1961), it is obvious why defendants did not assert their then believed to be nonexistent constitutional rights to object to the introduction in evidence of the narcotics in question by reason of their having been obtained by an illegal search and seizure. However, the reversal of the judgments of conviction by the Appellate Division restores the defendants to the same position that they were in before the two trials took place. Both the statute (Code Crim. Pro., § 544) which reads that ‘ ‘ When a new trial is ordered, it shall proceed in all respects as if no trial had been had ’ ’, and the cases make that conclusion indisputable (People v. Ercole, 4 N Y 2d 617, 620; People v. Brady, 31 Misc 2d 139). The defendants are, therefore, now in a position to invoke the Mapp v. Ohio rule (People v. Coffey 11 N Y 2d 142; People v. Loria, 10 N Y 2d 368).
Ordinarily, upon a motion such as this, controverted questions of fact exist which necessitate a hearing. Where, however, the record makes it clear that the search and seizure could not have *77 been legal, a hearing becomes unnecessary and this court may and should dismiss an indictment which is predicated soie'y on the products of an illegal search and seizure (People v. Yarmosh, 11 N Y 2d 397; People v. Wade, 12 N Y 2d 61). In the Yarmosh case the court said (p. 401): “ On these facts as established by the policemen themselves, the search and seizure could not have been legal. No hearing could change that. Since all the convictions were based on this illegally seized evidence, they must all be reversed and the information dismissed ”.
In the Wade case the court said:
“ Yarmosh also controls our disposition of this case. * * * Since the arresting officer’s own testimony establishes that these items were illegally removed from defendant’s dresser, they would be inadmissible upon any retrial of this case. It would, therefore, be impossible to secure a conviction on this information, which is founded on defendant’s possession of those items.
“ The judgment should be reversed and the information dismissed.”
The District Attorney, who did not submit any brief or memorandum in opposition to defendants’ applications, orally conceded that without the products of the search he cannot establish a ease against the defendants. The alternative relief requested is therefore granted and the indictment is dismissed as against both defendants.