In re Avram SHAPIRO, Debtor.

Mary STEED, Plaintiff,

v.

Avram SHAPIRO, Defendant.

Bankruptcy No. 194–14431–352.
Adv. No. 194–1312.

United States Bankruptcy Court,
E.D. New York.

March 31, 1995.

Macco, Hackeling & Stern by Michael J. Macco, Huntington, NY, for debtor-defendant.

Tantleff & Cohen, P.C. by Ivan Tantleff, Brooklyn, NY, for plaintiff.

**DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON § 523 OBJECTIONS TO DISCHARGE-ABILITY OF DEBT**

MARVIN A. HOLLAND, Bankruptcy Judge:

Before this Court are cross-motions for summary judgment in this adversary proceeding which seeks a declaration that the Plaintiff's claim is non-dischargeable under 11 U.S.C. § 523(a)(6). The Plaintiff's motion for summary judgment is denied; The Debtor–Defendant's motion for summary judgment is granted.

*STATEMENT OF FACTS*

On May 31, 1994, the Debtor–Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code. On or about September 19, 1994, Plaintiff filed her complaint pursuant to 11 U.S.C. § 523(a)(6) seeking to

except from discharge a claim against the Debtor–Defendant. The Debtor–Defendant served and filed an answer dated October 13, 1994.

The Debtor–Defendant is a Doctor of Podiatry. In 1988, the Plaintiff was examined by the Debtor–Defendant who recommended and subsequently performed surgery upon her feet. The Debtor–Defendant then made a "house call" to Plaintiff's home ostensibly to remove sutures. The Plaintiff alleges that during this "house call" the Debtor had "unpermitted sexual contact with Plaintiff" (hereinafter, the "1988 Incident") which is the gravamen of this adversary proceeding.

The 1988 Incident resulted in the Debtor–Defendant's conviction for sexual misconduct and for sexual abuse in the third degree, both of which are misdemeanors under the New York Penal Code. However, by order of the Appellate Term, Second and Eleventh Judicial Districts (hereinafter, the "Appellate Term"), entered May 10, 1991, the Debtor's judgment of conviction was unanimously reversed.[1]

By "Certificate Denying Leave" dated September 19, 1991, the New York State Court of Appeals (hereinafter, the "Court of Appeals") denied leave to further appeal the order of the Appellate Term.

On or about October 21, 1989, the Plaintiff commenced a medical malpractice action against the Debtor–Defendant in the Supreme Court of the State of New York, Kings County (hereinafter, the "State Court") based upon the 1988 Incident. The Debtor–Defendant moved to dismiss on the grounds that, *inter alia*, it was barred by the one-year statute of limitations for intentional torts.

By order dated November 21, 1991 (hereinafter, the "Dismissal Order"), the State Court granted the Debtor's motion to dismiss the malpractice action on the basis that it was one of assault and battery and therefore time-barred pursuant to New York Civil Procedure Laws and Rules (hereinafter "CPLR") § 215. On appeal, the State

Court's decision was unanimously affirmed by the Appellate Division Fourth Department. The Plaintiff's petition to the Court of Appeals for further permission to appeal was denied.

### DISCUSSION

■ Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056, governs motions for summary judgment in the federal courts. The purpose of the motion is to dispose of issues which can be decided upon established, admitted or ascertainable facts without a trial. The court must deny summary judgment where there is a genuine issue as to any material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and grant it where there is no such issue and the movant is entitled to judgment as a matter of law, *Hamilton v. Smith*, 773 F.2d 461, 466 (2d Cir.1985).

The complaint seeks an order pursuant to 11 U.S.C. § 523(a)(6) excepting from the Debtor–Defendant's discharge the Plaintiff's "claim" arising from the 1988 Incident. Section 523 of the Code provides in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any *debt*—

(6) for willful and malicious injury by the debtor to another entity ... [emphasis added].

■ Thus before a court even addresses the issue of whether grounds exist for excepting a certain debt from a debtor's discharge, it must be established that a "debt" existed prior to the debtor's bankruptcy. The term "debt" is defined in 11 U.S.C. § 101(12) as "liability on a claim". "Claim" is defined in 11 U.S.C. § 101(5) in pertinent part as a "right to payment ...".

■ We need not consider whether the Debtor–Defendant committed the acts of which he was charged and of which the Plaintiff now complains. As set forth above, the malpractice action was dismissed because the State Court found that the cause of action

---

1. The order of reversal stated in pertinent part:

Judgment of conviction unanimously reversed on the law and facts and information dismissed.

alleged by the Plaintiff was one of assault and battery and therefore time-barred pursuant to CPLR § 215 [2] and the dismissal was affirmed on appeal. Since the allegations in the malpractice action concerning sexual misconduct form the basis of the Plaintiff's complaint, as of the commencement of this case the Plaintiff no longer had a "right to payment" against the Debtor–Defendant for such sexual misconduct which was enforceable in state court. No longer having any "right to payment", the Plaintiff does not have a "claim" enforceable against the Debtor–Defendant, and thus, there exists no "debt" to except from the Debtor–Defendant's discharge.

The Plaintiff maintains, however, that notwithstanding the Dismissal Order, her "claim" was effectively revived by CPLR § 213–b (enacted in 1992) which provides:

Notwithstanding any other limitation set forth in this article or in article

five of the estates, powers and trusts law, *an action by a crime victim,* or the representative of a crime victim, as defined in subdivision six of section six hundred twenty-one of the executive law, *may be commenced to recover damages from a defendant convicted of a crime* which is the subject of such action, for any injury or loss resulting therefrom *within seven years of the date of the crime* [emphasis added].

The Plaintiff asserts that because she is a "crime victim" and the Debtor–Defendant has been "convicted of a crime", pursuant to CPLR § 213–b, she could now commence a timely action to recover damages from the Debtor–Defendant as a result of the 1988 Incident.

The Debtor–Defendant counters that the Plaintiff does not have an action under CPLR § 213–b because: (1) his conviction was overturned on appeal, (2) even if his conviction had not been overturned, the offenses for which he was convicted of do not constitute "crimes" within the meaning of CPLR § 213–b because they were misdemeanors, and (3) the dismissal of the malpractice action is *res judicata* and therefore bars the Plaintiff from re-litigating any claim for intentional tort resulting from the 1988 Incident.

We need not address the Debtor–Defendant's assertion that a misdemeanor does not constitute a "crime" under CPLR § 213–b, nor his argument based on *res judicata* [3] because notwithstanding the wording of CPLR § 213–b, which appears to be applicable whenever a defendant has been "convicted of a crime", it does not apply where a judgment of conviction is reversed and the information dismissed.

In *People v. Palmer,* 109 N.Y. 413, 17 N.E. 213 (1888), a case decided by the New York Court of Appeals in 1888, the defendant was convicted of an assault in the third degree which was a lower degree of the crime than that charged in the indictment. On appeal, the General Term reversed the judgment of conviction on questions of law only, and remanded for a new trial. The defendant appealed from so much of the General Term decision as ordered a new trial. On appeal

2. The Dismissal Order stated in pertinent part: [t]he complaint seeks recovery of damages for the injuries sustained by the plaintiff by the sexual abuse [by the Debtor]. The words used in the pleading sound in medical malpractice and lack of informed consent. The bills of particular allege no injuries arising from the course of podiatric care and treatment. The action was commenced within the statutory period governing actions for medical malpractice but after the one year period applicable to intentional torts. The issue before the Court is whether a negligence or assault statute of limitations govern these facts ... The Court believes that the essence of the complaint is the assaultive behavior of [the Debtor]. His professional expertise was merely a pretext upon which he gained access to the plaintiff's apartment in order to sexually abuse her ... The Court is not bound to accept the theories asserted in a complaint as dispositive of the nature of the cause of action ... The plaintiff cannot convert assaultive behavior into malpractice merely by virtue of the podiatrist-patient relationship ... There is no cause of action for negligent assault and the complaint ... must be dismissed because it is time-barred under CPLR 215.

3. Moreover, we will refrain from addressing the issue as to whether CPLR § 213–b applies retroactively to defendants convicted of crimes prior to its enactment, as this issue was not raised by the parties.

to the New York Court of Appeals, the defendant/appellant contended that because he had been convicted of assault in the third degree, he had been acquitted of assault in any higher degrees, and therefore he could not be re-tried for anything but the lesser crime of which he had been convicted. The New York Court of Appeals rejected the defendant/appellant's argument and held that he "must go back and stand his trial under the indictment as though he had never been tried." *Palmer*, 109 N.Y. at 420, 17 N.E. 213. The Court of Appeals further held that the effect of a reversal of a judgment of conviction is that the "judgment, as well as the record of the former trial, [are] annulled and expunged by the judgment of the appellate court, and they are as though they never had been …". *Id.*

New York has been consistent in following this holding. In *People v. Bach,* 61 Misc.2d 630, 631, 306 N.Y.S.2d 365 (1970), a case where the defendant's conviction of murder in the first degree was reversed on appeal, the court held:

> When this defendant's conviction of the crime of murder in the first degree was reversed, her judgment of conviction and the record of her former trial became annulled as though they had never been (*People v. Palmer,* 109 N.Y. 413[, 17 N.E. 213]), and as a result of such legal nullity, this defendant has now been restored to and is deemed to be in precisely the same position that she was in before her trial took place [citations omitted], *and she is not considered as having been convicted* [emphasis added].[4]

Similarly, in *People v. Ercole,* 4 N.Y.2d 617, 620, 176 N.Y.S.2d 649, 152 N.E.2d 77 (1958), the New York Court of Appeals held:

> It is well-settled law in this State that when a defendant procures a reversal of his conviction and sentence for legal error at trial, he may not plead the former proceedings in bar to a second trial for the same offense. Upon reversal, the defendant is deemed to be in precisely the same position as though there had been no trial

[citations omitted] … *So thoroughly does a reversal operate to vitiate the former proceedings* that the defendant may be tried upon a superseding indictment which contains a count not included in the first indictment … [emphasis added].

Both *Ercole* and *Palmer* were cited in *People v. Henry,* 59 Misc.2d 522, 299 N.Y.S.2d 969 (1969), where the defendant's conviction of assault in the second degree had been reversed on appeal, and the issue before the court was the effect of such reversal on the obligations of the surety of the defendant's bail bond under the bail bond. Henry claimed that by virtue of the reversal of his conviction his bail bond should have been reinstated. The *Henry* court agreed, holding:

> When the Appellate Division reversed this defendant's conviction, he was 'deemed to be in precisely the same position as though there had been no trial' (*People v. Ercole,* 4 N.Y.2d 617, 620[, 176 N.Y.S.2d 649, 152 N.E.2d 77]) and the judgment of conviction was as though it had never been (*People v. Palmer,* 109 N.Y. 413 [17 N.E. 213]), *and thereafter the defendant was entitled to treatment as an indicted person rather than as a convicted person,* for he was restored to the same posture that he was in at the time of his indictment (*People v. Porter,* 37 Misc.2d 73[, 236 N.Y.S.2d 162]; *People v. Ressler,* 47 Misc.2d 954 [263 N.Y.S.2d 509]) [emphasis added].

*Henry,* 59 Misc.2d at 524, 299 N.Y.S.2d 969.

In addition, in interpreting that portion of Section 568 of the Code of Criminal Procedure which provided "that the above named … shall at all times render himself amenable to the orders and process of the court; *and, if convicted,* shall appear for judgment and render himself in execution thereof [emphasis added]", the *Henry* court stated:

> This court believes a reasonable interpretation of … the words "if convicted, shall appear for judgment, and render himself in execution thereof" can only mean a conviction and judgment which is legal and final,

---

4. *See also People v. Nitzberg,* 289 N.Y. 523, 530, 47 N.E.2d 37 where the court noted that "… even without a statute the courts give no effect to

a judgment [of conviction] which has been reversed."

and that such was the legislative intent ... Surely the Legislature intended that the above-quoted words of the statute would mean a conviction and judgment which is legal and valid, not one which has become a nullity by reversal ...

*Id.*

█ Although all of the cases cited above are distinguishable on their facts from the matter before this Court, they are significant for their consistent holdings that a reversal of a judgment of conviction has the effect of rendering the conviction a legal nullity. In effect, they stand for the proposition that reversal of a criminal conviction constitutes an "unconviction".

The Plaintiff asserts that the above cited cases are inapplicable because they were decided prior to the enactment of the Criminal Procedure law in 1971 (hereinafter, the "CPL"). Moreover, the Plaintiff asserts that the cases of *Gunning v. Codd,* 49 N.Y.2d 495, 427 N.Y.S.2d 209, 403 N.E.2d 1208 (1980) and *Briggins v. McGuire* 67 N.Y.2d 965, 502 N.Y.S.2d 985, 494 N.E.2d 90 (1986) are the applicable law with regard to this matter and the issue as to the applicability of CPLR § 213–b.

We reject both assertions.

First, while the CPL has put to rest the issue of what constitutes a "conviction"[5], it in no way diminishes the holdings of the cases cited above with respect to the effect that a reversal of a judgment of conviction has on the defendant. In all of the cases cited above, as well as in this case, there has never been a dispute as to whether or not the defendant had been convicted. Rather, the issue in this case and the cases cited above is the effect that a reversal of a judgment of conviction has with respect to the conviction. As to this issue, the enactment of the CPL and its definition of "conviction" has no relevance to the cases cited above and the propositions for which we cite such cases.[6]

Second, both *Gunning* and *Briggins* concerned the interpretation of New York's Public Officers Law § 30(1)(e)[7] where convictions of police officers for felonies were reversed on appeal. In both cases the courts held that immediately upon a conviction of a felony a public office became vacated irrevocably notwithstanding a subsequent reversal. Thus, under *Gunning* and *Briggins,* "conviction" for purposes of Public Officers Law § 30(1)(e), as it then existed, encompassed even a conviction that had been overturned.[8] However, these cases do not have any application to the present matter. Those decisions, as well as others which have interpreted Public Officers Law § 30(1)(e), are clearly dependent on policy considerations peculiar to public officers. As the New York Court of Appeals stated in, *Duffy v. Ward,* 81 N.Y.2d 127, 596 N.Y.S.2d 746, 612 N.E.2d 1213 (1993), in interpreting Public Officers Law § 30(e)(1):

The statute's requirement that the office be vacated on conviction reflects two legislative concerns. First, as a practical mat-

---

**5.** *See* CPL § 1.20(13).

**6.** In fact, the Debtor–Defendant maintains that CPL § 160.60 codifies the holdings of the cases the Plaintiff maintains are inapplicable. However, because we hold that the enactment of the CPL in no way diminishes the holdings of the case cited herein as to the propositions for which they are cited, we need not determine whether CPL § 160.60 does in fact codify the holdings of such cases.

**7.** At the time those cases were decided, Public Officers Law § 30(1)(e) stated in pertinent part:
1. Every [public] office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
   e. *His conviction* of a felony, or a crime involving a violation of his oath of office [emphasis added].

**8.** Public Officers Law § 30 was amended in 1987 and now provides in pertinent part [the words highlighted were added by the amendment]:
1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
   e. His conviction of a felony, ... *provided, however, that a non-elected official may apply for reinstatement ... upon reversal or the vacating of such conviction where the conviction is the sole basis for the vacancy ...*
The amendment further supports the holdings of *Gunning* and *Briggins* that under the Public Officers Law, a reversal of a conviction does not automatically restore a defendant to its prior position.

ter, governmental work should not go unattended, or a position unfilled, while a convicted officeholder pursues a potentially lengthy appeal [citations omitted]. Second, and more fundamentally, the public has a "right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust" [citation omitted]. Although the result of implementing the statute is sometimes harsh, it is clear that "the balance must be struck in favor of the public" when the officer's interest is weighed against that of State's citizens [citation omitted] ...[9]

These public policy considerations which clearly are the foundations for the decisions interpreting Public Officers Law § 30(e)(1) are not pertinent to an analysis of CPLR § 213–b.

Thus, we hold that the reversal of the Debtor–Defendant's judgment of conviction renders such conviction a legal nullity and restores the Debtor–Defendant to the position of not having been convicted for purposes of CPLR § 213–b, and conclude that:

(1) as of the date of the Dismissal Order, the Plaintiff no longer had a "claim" enforceable against the Debtor–Defendant in state court, and

(2) as a result of the reversal of the Debtor–Defendant's conviction, the Plaintiff's time-barred claim against the Debtor–Defendant is not revived by CPLR § 213–b. Consequently, the Plaintiff does not have a "claim" based on the 1988 Incident which is enforceable in state court and therefore, she has neither a "claim" against the Debtor–Defendant, nor is there a "debt" for purposes of this 11 U.S.C. § 523(a)(6) proceeding.

---

**9.** *See also Briggins* where the court stated in support of its holding that " '[c]ontinued performance of governmental functions necessitates the existence of a point in time at which the affected office may be filled without concern for the possibility that at some future date a former officer's conviction may be reversed' ". [citation omitted]. In addition, in a case not cited by the Plaintiff, *Toro v. Malcolm*, 44 N.Y.2d 146, 151–52, 404 N.Y.S.2d 558, 375 N.E.2d 739 (1978), the New York Court of Appeals set forth a further policy reason which supported the holdings of *Gunning* and *Briggins* when it stated:

Since there is no "debt" to except from discharge, the Plaintiff's motion for summary judgment is denied and the Debtor–Defendant's motion for summary judgment is granted.

The Debtor–Defendant shall settle an order consistent herewith within ten days.

In weighing the interest of a public officer convicted of a felony, whether justly or unjustly, against that of the public, the balance must be struck in favor of the public's right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust. [citation omitted]. A felony conviction, notwithstanding its reversal on appeal, may in many cases shatter this ideal. To avoid this occurrence, we believe the Legislature has chosen to vacate a public office upon the officer's conviction of a felony.