In re Thomas M. LEIST, Debtor.

Weidle Corporation et al., Plaintiffs,

v.

Thomas M. Leist, Defendant.

Bankruptcy No. 07–32617.
Adversary No. 07–3254.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Dec. 16, 2008.

See also 2004 WL 1949509.

Eric S. Thompson, Dayton, OH, for D. Scott Weidle and Weidle Corporation.

Lee A. Slone, Dayton, OH, for Debtor and Defendant.

John Paul Rieser, Dayton, OH, Chapter 7 Trustee.

Office of the United States Trustee, Columbus, OH.

Decision Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment, Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, and Finding Debt Owed to Weidle Corporation Nondischargeable Pursuant to 11 U.S.C. § 523(a)(6)

GUY R. HUMPHREY, Bankruptcy Judge.

## I. INTRODUCTION

This adversary proceeding is before the court on the cross-motions for summary

judgment filed by the Plaintiffs and Defendant. Plaintiffs assert that a *Decision, Entry, and Order* filed on December 2, 2003 (the "Decision")[1] in the Montgomery County Ohio Court of Common Pleas (the "State Court") establishes that they are owed a debt by the Debtor, Thomas M. Leist ("Debtor" or "Defendant"), that is nondischargeable pursuant to § 523(a)(4) and (6)[2]. The Debtor opposes the Plaintiffs' motion for summary judgment and seeks summary judgment on the basis that the Decision does not establish grounds for finding the debt nondischargeable under § 523. For the reasons set forth below, the court finds that: a) Plaintiff Weidle Corporation is entitled to summary judgment against the Debtor under § 523(a)(6) based on a willful and malicious injury to the corporation and b) the Debtor is entitled to summary judgment as to all other claims, including any relief sought by Plaintiff D. Scott Weidle ("Scott Weidle").

## II. FACTS AND PROCEDURAL BACKGROUND

### A. *Facts*

The relevant facts are either stipulated to by the parties through their *Stipulation of Facts* (Doc. 20) or were determined by the State Court in its Decision. The Plaintiffs are Weidle Corporation, an Ohio corporation, doing business in Germantown, Ohio (Doc. 20, ¶ 1) and Scott Weidle, the principal of Weidle Corporation (Doc. 20, ¶ 2). The Debtor was a real estate broker who had a "long established business relationship" with the Plaintiffs (Doc. 20, ¶¶ 3 and 4). Weidle Corporation acquires real estate for residential development as part of its overall business (Decision, p. 2). The Debtor was the exclusive realtor for such development, although at some point in 1999, Weidle Corporation was using another realtor for a development known as Broadhill Estates. *Id.* The Debtor "was upset" and "felt betrayed" by this development and felt his role with Weidle Corporation "was anything but secure[.]" *Id.*

Against this background, a dispute ensued between the parties concerning a 10.5 acre parcel of real estate in Germantown, Ohio known as the "Doc Hamilton" property (the "Property") (Decision, p. 1). In August 2000, the Property was unimproved and owned by Doc Hamilton's children, James Hamilton and Susan Bobb. *Id.* In August 2000, Scott Weidle asked the Debtor to make an initial offer on behalf of Weidle Corporation to James Hamilton to purchase the Property for $8,000 an acre (Decision, p. 2–3). Although no realtor fee was discussed, the Defendant was not doing this service on a volunteer basis and expected to earn a fee if Weidle Corporation purchased the Property. (Decision, p. 3).

Rather than contact James Hamilton as the realtor for Weidle Corporation, the Defendant contacted James Hamilton concerning purchasing the Property for his own benefit. *Id.* Initially, he spoke to Hamilton's wife, who informed him the Property could be purchased for $80,000. *Id.* By early September, "probably" September 4th, a proposed option contract to purchase the Property was submitted, with the purchase price being $80,000. *Id.*

---

1. *D. Scott Weidle, et al. v. Leist, Decision, Entry and Order Granting Judgment to the Plaintiff, Weidle Corporation, against Defendant, Thomas Leist, in the Amount of $461,325.00*, Case No. 2002 CV 00308, 2003 WL 25564873 (Montgomery County Ohio Court of Common Pleas, December 2, 2003)

(Doc. 21, Attached Exhibit; Doc. 25, Exhibit A).

2. Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532, cited in the decision as "§ ___".

Under this offer, the Debtor agreed to purchase the Property with John Evans, another realtor. *Id.* Evans had been incorrectly told by the Debtor that Weidle Corporation had discharged him from his duties with respect to the Property. *Id.*

James Hamilton informed the Debtor the asking price was $100,000 and he did not want an option contract. *Id.* On September 7, 2000, Scott Weidle contacted the Debtor about the Property and, after being informed by the Debtor that he was "still researching" the development, Scott Weidle "became upset" and told the Debtor he would hire another realtor. *Id.*

Scott Weidle hired other realtors who, on behalf of Weidle Corporation, on September 8, 2000, submitted to James Hamilton a purchase contract offering to purchase the Property for $85,520.00 or $8,000 an acre. (Decision, p. 3–4). James Hamilton informed the Debtor of this offer and the Debtor and James Hamilton ultimately entered into a contract on September 10, 2000 under which the Debtor and Evans would purchase the Property for $100,000 (Decision, p. 4). Weidle Corporation wanted the Property for development and would have purchased the Property for $100,000, but for the intervention of the Debtor. *Id.*

The Debtor and Evans purchased the Property for residential development, but ultimately sold it to Associate Construction. *Id.* The State Court determined that the evidence showed, with reasonable certainty, that Weidle Corporation's lost profits in not buying the Property were $461,325.00 (Decision, p. 5).

The Plaintiffs filed a complaint against the Debtor in the State Court on January 16, 2002, which was assigned Case No. 2002 CV 00308 (Doc. 20, ¶ 8). The Decision of the State Court found the Debtor breached his contractual and fiduciary obligations to Weidle Corporation and awarded damages of $461,325.00, plus post-judgment interest (Doc. 20, ¶ 8; Decision, p. 6–7)[3]. The Decision was affirmed by the Ohio Second District Court of Appeals and the Supreme Court of Ohio declined jurisdiction (Doc. 20, ¶ 10); *Weidle v. Leist,* 2004 WL 1949509 (Ohio Ct.App. Sept. 3, 2004), *appeal not allowed* 104 Ohio St.3d 1462, 821 N.E.2d 578 (Ohio 2005).

### B. *Procedural Background*

On October 5, 2007, the Plaintiffs, Weidle Corporation and Scott Weidle, filed a complaint alleging that, based on the Decision of the State Court, a debt was owed to them by the Debtor and it was nondischargeable pursuant to § 523(a)(4) based upon defalcation while acting in a fiduciary capacity (Doc. 1). The Debtor answered on October 24, 2007 (Doc. 4). Following the filing of pretrial statements, the court set dates for summary judgment in a January 14, 2008 order (Doc. 9). On February 5, 2008, the Plaintiffs moved to amend their complaint to include embezzlement under § 523(a)(4) and also willful and malicious injury under § 523(a)(6) (Doc. 11). The court granted the motion on March 26, 2008 (Doc. 15), an amended complaint was filed on March 27th (Doc. 16), and an amended answer was filed on March 28th (Doc. 17). The court re-set the summary judgment filing dates (Doc. 15) and, in a separate order, allowed the parties until July 23, 2008 to file the State Court record (Doc. 22)[4].

---

**3.** The Plaintiffs list the total amount remaining due under the judgment as $542,827.18 which is asserted to include post-judgment interest accumulating from the date of the Decision (Doc. 1, p. 3).

**4.** The parties had an opportunity to further supplement the record with filings from the State Court. A March 26, 2008 order provided the parties until June 13, 2008 to file any supporting material related to their motions

On June 6, 2008, the Plaintiffs moved for summary judgment based upon embezzlement under § 523(a)(4) and willful and malicious injury under § 523(a)(6) (Doc. 21). The Plaintiffs abandoned their cause of action for breach of fiduciary duty under § 523(a)(4) (Doc. 21, p. 12, n. 2). The Debtor filed a response to the Plaintiffs' summary judgment motion (Doc. 24) and a cross-motion for summary judgment (Doc. 25) on July 3, 2008. The Plaintiffs filed a response to the Debtor's cross-motion for summary judgment on July 23, 2008 (Doc. 27). The Debtor filed a reply brief supporting his motion for summary judgment on July 30, 2008 (Doc. 29). The parties also filed *Stipulations of Fact* (Doc. 20). On September 5, 2008, the court issued an order allowing the parties to file optional supplemental legal memoranda (Doc. 30) and each set of parties filed a supplemental memorandum (Docs. 32 and 33).

## III. ANALYSIS

### A. *Jurisdiction*

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### B. *Summary Judgment Standard*

The standard to address the parties' filings is contained in Federal Rule of Civil Procedure 56(c) and is applicable to adversary proceedings through Bankruptcy Rule 7056 and states, in part, that a court must grant summary judgment to the moving party if:

the pleadings, the discovery and disclosure statements on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Federal Rule of Civil Procedure 56(c).

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–332, 106 S.Ct. 2548. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348.

### C. *Burden and Standards For Establishing an Exception to Discharge and the Applicability of the Doctrine of Issue Preclusion*

██ The Plaintiffs must establish the elements of their nondischargeability

---

for summary judgment (Doc. 15). On June 9, 2008, an order extended that deadline until July 23, 2008 (Doc. 22). On July 22, 2008, the original file of the entire state court record was delivered to the Clerk of the Bankruptcy Court from the Clerk of the State Court. For the reasons stated in a July 23,

2008 order (Doc. 26), the court ordered the file returned to the State Court Clerk and provided the parties the option to designate any portion of the State Court record for the court's consideration not later than August 15, 2008. No further filings were made from the State Court record by either party.

claims by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Further, because exceptions to discharge are limits on a debtor's ability to obtain a "fresh start" in bankruptcy, they are to be narrowly construed. *Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 532–33 (Bankr.S.D.Ohio 2008), *citing Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998).

▪ Both sets of parties are relying upon the findings of the State Court in the Decision to meet their burden of proof under Federal Rule of Civil Procedure 56 governing summary judgment motions. The parties agree that the findings of the State Court are entitled to preclusive effect.[5] Nevertheless, this court must independently determine if those findings meet the elements of § 523(a)(4) and (6) and Rule 56. *Spilman v. Harley*, 656 F.2d 224, 228–229 (6th Cir.1981), *overruled on other grounds Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 319 (6th Cir.1997); *In re Trantham (Monsanto Co. v. Trantham)*, 304 B.R. 298, 305 (6th Cir. BAP 2004).

D. *Is Scott Weidle a Creditor of Debtor Entitled to a Determination of Nondischargeability under § 523?*

▪ As elementary as it may seem, a creditor must establish that he is owed a debt before it can be determined that the debt is nondischargeable under any § 523(a) exception to discharge. *Steed v. Shapiro (In re Shapiro)*, 180 B.R. 37, 38 (Bankr.E.D.N.Y.1995); *Spinnenweber v. Moran (In re Moran)*, 152 B.R. 493, 495 (Bankr.S.D.Ohio 1993). The Decision of the State Court liquidated a debt and en-

tered judgment in favor of Weidle Corporation only (Decision, p. 2, fn 1 and p. 7). Accordingly, based upon the record before this court, the Debtor is granted summary judgment as to any relief sought by Plaintiff Scott Weidle.

E. *Analysis Under § 523(a)(4)*

▪ The Plaintiffs argue and the Debtor disputes that the debt owed to Weidle Corporation is nondischargeable "embezzlement" under § 523(a)(4). For purposes of § 523(a)(4), embezzlement is defined by federal common law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir. 1996). Embezzlement is proven "by showing that [the creditor] entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id.* at 1173. A creditor must prove three elements to establish embezzlement: (1) "that he entrusted his property to the debtor," (2) that "the debtor appropriated the property for a use other than that for which it was entrusted," and (3) that "the circumstances indicate fraud." *Id.* Accord *Cash Am. Fin. Svcs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 115–16 (6th Cir. BAP 2007).

▪ The key issue in the cross-motions for summary judgment is whether the corporate business opportunity is property susceptible to embezzlement. The parties do not dispute that the Decision of the State Court found a "fraudulent misappropriation" of the business opportunity by the Debtor. However, the Debtor con-

---

**5.** *See Plaintiffs' Motion for Summary Judgment* (Doc. 21, p. 7–9) and *Defendant's Motion* *for Summary Judgment* (Doc. 25, p. 3–4).

tends that the business opportunity misappropriated by the Debtor is not property under Ohio law and, therefore, the Debtor's conduct did not constitute embezzlement. The Bankruptcy Code does not define "property" and the issue of whether a corporate business opportunity is "property" within the meaning of § 523(a) or under Ohio law is a question rarely addressed in reported case law. However, there are federal and Ohio decisions that are instructive.[6]

Courts have recognized that intangible intellectual property, such as a copyright, trademark, or patent is capable of being converted or embezzled. Thus, in *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (6th Cir. BAP 2004), the B.A.P. determined that the debtor violated a patent and willfully and maliciously injured Monsanto in infringing its patent, giving rise to the determination that the debt was nondischargeable. *Id.* at 308. *Monsanto* recognized that the patent was "property" under § 523(a)(6). *Id.* See also *In re Access Cardiosystems, Inc.*, 340 B.R. 127, 150 (Bankr.D.Mass.2006) (an example of a corporate business opportunity that originated from the intellectual property rights of a corporation).

In *Digital Commerce, Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809 (Bankr. W.D.Mich.2004), the bankruptcy court held that a business opportunity was "property" that could be embezzled as that term is used in § 523(a)(4). *Id.* at 826–27. The court found that a business opportunity was intangible property akin to a patent or other intellectual property. *Id.* at 826. In making that determination, the court stated that "[a]lthough the undersigned judge believes that any expansion of the meaning of 'property' to include intangibles in the embezzlement context may be subject to some criticism, the facts in this case warrant a conclusion that the Debtor appropriated to his own use property (a concrete corporate opportunity) that was entrusted to him (in his capacity as President) in a fraudulent (secretive and unwarranted) manner. The debt is nondischargeable under § 523(a)(4) to the extent it relates to 'embezzlement.'" *Id.* at 826–27 (footnote omitted). See also *In re Century Glove, Inc.*, 73 B.R. 528, 533 (Bankr.D.Del.1987) (recognizing that under Delaware law a corporate business opportunity is considered to be a "corporate asset.").

However, Ohio law does not support the conclusion that a business opportunity constitutes property.[7] While the issue of

6. Outside certain federally created rights and interests, such as rights and interests in intellectual property created under federal copyright and patent law, property interests are created and defined by state law. *See Nobelman v. American Savings Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 700 (6th Cir.1999); *Demczyk v. Mutual Life Ins. Co. (In re Graham Square, Inc.)*, 126 F.3d 823, 827 (6th Cir.1997). Thus, while the court looks to federal bankruptcy law to determine whether an exception to discharge under § 523(a) has been met, the court must look to applicable substantive federal and state law to determine the existence and nature of interests in property.

7. Although the case law in this section is included as part of the review of the § 523(a)(4) embezzlement cause of action, the decisions are pertinent to the fundamental issue of whether a corporate business opportunity is property within the meaning of both § 523(a)(4) and (6). As explained, property rights are determined in this context by nonbankruptcy law and based upon the court's review of the limited analogous Ohio case law, other persuasive authority and the mandate to construe dischargeability exceptions narrowly, the corporate business opportunity found to be usurped in the Decision of the State Court is not property within the meaning of § 523(a)(4) or (6).

whether a business opportunity is property under Ohio law is a difficult one because the question has little meaning outside of the bankruptcy context, the court has concluded that an intangible business opportunity under Ohio law is distinguishable from intellectual property recognized under federal law and is not considered to be property.

 Usurpation of a business opportunity is an established tort in Ohio. To establish that tort, one must show that an officer or director received information about an opportunity while working for the corporation or other business entity, the opportunity is in the same line of business, and the corporation is deprived of that opportunity through the wrongdoer's conduct. *Prodan v. Hemeyer*, 80 Ohio App.3d 735, 610 N.E.2d 600, 606 (1992). The tort is a corollary of the duty of loyalty officers and directors owe to a corporation. *Id.* These types of Ohio business tort cases recognize that the fiduciary must transfer the business opportunity back to the corporation and account for lost profits. *Frank Lerner and Assocs., Inc. v. Vassy*, 74 Ohio App.3d 537, 599 N.E.2d 734, 739 (1991), *citing Hubbard v. Pape*, 2 Ohio App.2d 326, 203 N.E.2d 365, 368 (1964).

Ohio case law supports the conclusion that while a corporate business opportunity might be an intangible interest, this interest does not rise to the level of a property interest. See *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1012 (Ohio Ct.App.2003) (conversion generally "based only upon the taking of identifiable, tangible personal property"); *Wiltberger v. Davis*, 110 Ohio App.3d 46, 673 N.E.2d 628, 634 (1996) (similar); *Davis v. Flexman*, 109 F.Supp.2d 776, 808 (S.D.Ohio 1999) (similar).

However, in *Zacchini v. Scripps–Howard Broadcasting Co.*, the Supreme Court of Ohio broadened the scope of "property" that could be the subject of a conversion claim when it stated that "it is now generally held that intangible rights which are customarily merged in or identified with some document may also be converted." 47 Ohio St.2d 224, 351 N.E.2d 454, 456–57 (1976), *reversed on other grounds*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). The court noted that "[e]xamples include drafts, bank passbooks, and deeds." *Id.* at 457. However, the court also stated that "conversion does not apply to any intangible right.... The distinguishing characteristic of conversion is the forced judicial sale of the chattel or right of which the owner has been wrongfully deprived. In the case of such intangible quasi-proprietary rights as are involved here, a forced sale would be largely absurd, because of the doubtfulness of determining what has been 'taken.'" *Id.* The court distinguished intangible copyright interests from the interests involved in that case. *Id.*[8]

In *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 551 N.E.2d 172 (1990), the Supreme Court of Ohio again refused to extend the law of conversion to other intangible rights and interests. In *Joyce*, the plaintiff alleged that his employment supervisors converted a suggestion that he made pursuant to an employee suggestion plan. *Id.* at 172. The court noted that the employee's ideas were "not expressed in a

---

**8.** In determining that such interests did not equate to property interests covered under a conversion claim the court stated that "[T]o extend the ambit of conversion to rights such as those claimed by plaintiff, which are more appropriately considered under wholly distinct legal principles, is confusing, unneces-

sary, and improper." *Zacchini*, 351 N.E.2d at 457. In this case, the misappropriation of a business opportunity is covered under Ohio tort law and, therefore, such an interest may be one of those considered by the Supreme Court of Ohio covered by other "distinct legal principles."

legally protected manner" and "[s]ince the ideas are not property, they are not capable of conversion or appropriation." *Id.* at 175. The court distinguished protected intellectual property such as copyrights, patents and trademarks. *Id.*

■ Given the foregoing analysis of Ohio law and the admonition from the Sixth Circuit to construe the nondischargeability sections narrowly, the court finds that a corporate business opportunity cannot be "property" for purposes of dischargeability. As reflected by *Zacchini* and *Joyce*, only limited intangible rights or interests such as "intangible rights which are customarily merged in or identified with some document (such as drafts, bank passbooks, and deeds)" definitely clearly rise to the level of "property" under Ohio law. The court finds that the non-exclusive opportunity to buy a parcel of real property that is not reduced to writing (in the form of an option contract or other enforceable written agreement) is more akin to the intangible rights or interests which the Supreme Court of Ohio determined do not constitute "property." While Ohio law recognizes a tort for the conduct committed by the Debtor, there is no definitive law from which this court can conclude that a business opportunity is "property." Particularly within the realm of dischargeability, the court declines to define Ohio law broader than its own state courts do. See *Rembert,* 141 F.3d at 281 ("[E]xceptions to discharge are to be strictly construed against the creditor.").

Accordingly, the court agrees with the Debtor and determines the business opportunity was not "property" of Weidle Corporation that could be embezzled and, therefore, grants the Debtor summary judgment as to Weidle Corporation's embezzlement cause of action under § 523(a)(4).

### 2. Analysis Under 11 U.S.C. § 523(a)(6)

■ The Plaintiffs also seek a determination that the debt owed to Weidle Corporation as determined by the State Court is nondischargeable pursuant to § 523(a)(6).[9] Given the fact that the Debtor has conceded that the Decision establishes a "willful and malicious injury" (Doc. 24, p. 4), the question then becomes whether the evidence before this court establishes that such an injury occurred to an "entity or to property of another entity." § 523(a)(6). The Debtor argues that: a) a business opportunity is not "property" as that term is used in § 523(a)(6) and, therefore, the Decision does not establish an injury to property of an entity; b) injuries to an entity under § 523(a)(6) are limited

---

9. Section 523(a)(6) states that "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

The Supreme Court explained in *Kawaauhau v. Geiger,* 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) that

The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to. injury.... Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the law-

yer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a,* p. 15 (1964) (italics in original).

An injury is not willful and malicious as defined under 11 U.S.C. § 523(a)(6), unless "the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it," *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 464 (6th Cir.1999), *quoting* Restatement of Torts § 8A, at 15 (1964).

to "battery, slander and libel" or similar injuries and do not include economic injuries such as the lost profits involved in this adversary; and c) the Plaintiffs did not plead "injury to an entity" and, therefore, there is no basis upon which to find such an injury to Weidle Corporation or any other entity. While the court finds that there was no injury to property of Weidle Corporation, the court finds that the Decision establishes an economic injury to Weidle Corporation that is nondischargeable pursuant to § 523(a)(6).

First, the court agrees with the Debtor's position that there was no injury to the property of Weidle Corporation. As discussed, the court finds that the business opportunity does not constitute property under Ohio law and, therefore, there was no injury to property of Weidle Corporation arising out of the Debtor's usurpation of the business opportunity.

Second, The Debtor argues that willful and malicious injury "to another entity" is intended to cover injuries such as battery, slander and libel which are injuries to an entity as opposed to vandalism which is injury to the property of an entity and that since the usurpation of the business opportunity is not in the "battery, slander and libel" category of injuries, § 523(a)(6) is not applicable to the facts of this adversary.[10] The court disagrees.

■ The court determines that an injury to an entity under § 523(a)(6) is not limited to "battery, slander and libel" or similar injuries. While libel and physical battery appear to be obvious examples of a § 523(a)(6) injury to an individual, the court finds nothing in the plain language of § 523(a)(6) that would suggest such a limitation to these examples. Rather, this court finds the reference, "by the debtor to another entity or to the property of another entity", by its plain language, is considerably more broad, and refers to an economic injury to a corporation just the same as a physical assault on an individual and the court finds no convincing argument to parse the language in the manner suggested by the Debtor.

The Bankruptcy Appellate Panel of the Sixth Circuit held that economic injuries can be the basis of determinations that debts are nondischargeable under § 523(a)(6). In *The Spring Works, Inc. v. Sarff (In re Sarff)*, the B.A.P. found an analogous economic tort against a corporation nondischargeable pursuant to § 523(a)(6). 242 B.R. 620, 629 (6th Cir. BAP 2000). A state court found that the debtor, a salesperson for the Spring Works, violated a covenant not to compete in aiding a competitor and misappropriating trade secrets. *Id.* at 623. The court summarized that "Sarff intentionally injured Spring Works by competing with it while he had a duty of loyalty to the

---

10. The court provided the parties with ample opportunity to brief the issues pertaining to "injury to an entity" versus injury to "property of an entity" under § 523(a)(6). The parties had an opportunity to file a supplemental memorandum specifically addressing whether the State Court Decision concerned an injury to Weidle Corporation since § 523(a)(6) covers willful and malicious injury to both an entity and to property of another entity (Doc. 30). The court noted that the Plaintiff's summary judgment motion concerned § 523(a)(6) and the court could consider granting summary judgment on the basis of willful and malicious injury to Weidle Corporation or property of Weidle Corporation. However, the court noted the arguments of the parties focused on the property issue. Accordingly, to the extent it could be argued that the court was considering granting summary judgment *sua sponte*, the court, consistent with Sixth Circuit precedent, provided the parties notice to further brief or supplement their cross-motions concerning all aspects of § 523(a)(6). *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir.1995).

company. He stole from Spring Works to aid a competitor and he repeatedly violated an injunction prohibiting him from competing against Spring Works." *Id.* "Based on the state court findings, the B.A.P. held that the bankruptcy court correctly determined that it was bound to apply the state court findings to determine whether the judgment was nondischargeable under § 523(a)(6)."[11] Similarly, in *Sullivan*, the court held that the economic injury arising out of the usurpation of a business opportunity gave rise to a nondischargeable claim under § 523(a)(6). *Sullivan*, 305 B.R. at 823.

 Third, the Debtor argues that the Plaintiffs are not entitled to relief under § 523(a)(6) because they did not plead or sufficiently plead an "injury to an entity" in their Complaint. The Plaintiffs' Amended Complaint (Doc. 16) sets forth a claim for relief under § 523(a)(6). In his supplemental filing, the Debtor argues that § 523(a)(6) constitutes two separate causes of action and the Plaintiffs only plead allegations of willful and malicious

injury to the property and not to the entity. Regardless of how one characterizes the phrase "to another entity or to property of another entity", the Amended Complaint, in paragraph 29, refers to the debt being non-dischargeable under § 523(a)(6) (Doc. 16). Paragraph 28 does refer only to injury to the property, but paragraph 27 incorporates all the factual allegations of the Amended Complaint, including the incorporation of the State Court Decision, which is the only significant evidence in this adversary proceeding and established a direct injury to Weidle Corporation.

 The Plaintiffs' First Amended Complaint sufficiently pleads a claim under § 523(a)(6) based upon the Federal Rules of Civil Procedure as interpreted by the Sixth Circuit. Federal Rule of Civil Procedure 8(a), applicable by Bankruptcy Rule 7008(a), provides in pertinent part that:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> \* \* \* \*

11. *In re Livingston*, 379 B.R. 711, 719–20 (Bankr.W.D.Mich.2007) takes issue with *Sarff* because it views that decision as implicitly suggesting that any intentional tort leading to financial loss is a basis for nondischargeability and renders the property prong of § 523(a)(6) superfluous. To the extent that *Sarff* reaches this far—a question not necessary to answer for purposes of this decision—the court, while respecting the reasoning in *Livingston*, feels it is important to apply the holdings of the B.A.P. and this decision need not go further. *See In re Hunter*, 380 B.R. 753, 775 (Bankr.S.D.Ohio 2008) (discussion of the need for bankruptcy courts to follow decisions of their Circuit's B.A.P.). However, regardless of the scope of *Sarff*, the court takes a different view than *Livingston*. In essence, the *Livingston* decision argues that any economic injury such as a destruction of a corporation's property—or even a physical injury to an individual—would also be a direct injury. *Id.* at 720–21. Even if that were so, the Supreme Court has noted surplusage

does not form a basis to ignore plain meaning or, stated another way, to create ambiguity where it would not exist otherwise. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Keeping this in mind, the notion that only a tort such as assault is to the entity and vandalism is to the property—while a logical dichotomy of the two prongs of § 523(a)(6)—is not consistent with the language Congress chose and to its collective wisdom this court defaults. Instead, Congress provided quite inclusive language referring to injury "by the debtor to another entity or to the property of another entity" and the decisions typically addressing § 523(a)(6) focus on "willful and malicious" because it is the stricture of that standard, as interpreted by *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) and its progeny, which limits § 523(a)(6). In that sense, the court agrees with *Livingston* that "mere entitlement to an economic recovery is not enough to establish dischargeability under § 523(a)(6)." *Livingston*, 379 B.R. at 721.

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Furthermore, Federal Rule of Civil Procedure 8(e) provides that "[p]leadings must be construed so as to do justice." All a plaintiff need set forth to plead a claim in a complaint under the liberal pleading standard provided by the Federal Rules of Civil Procedure is sufficient information to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[12]

In *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226 (6th Cir.1991), the Sixth Circuit found that a complaint with less specificity than the Complaint in this adversary stated a claim for relief under § 523(a)(6). The Sixth Circuit reversed the bankruptcy court and district court which determined that the plaintiff failed to allege a cause of action under § 523(a)(6). *Id.* at 1227. In the facts of that adversary, the plaintiff alleged facts concerning the tort of conversion and did not even mention § 523(a)(6) or any of the terms contained within that section. *Id.* at 1228. The court stated that "[t]he complaint sufficiently avers that Howard did a wrongful act (the conversion) intentionally, which necessarily pro-

duced harm and was without cause or excuse. Thus, we hold that plaintiffs alleged a willful and malicious injury under § 523(a)(6)." *Id.* The Plaintiffs' Amended Complaint provides more specificity and clarity than the complaint in *Howard,* clearly putting the Debtor on notice that they were seeking a determination that the debt owed to Weidle Corporation was non-dischargeable under § 523(a)(6).

The fact that the demand for relief in the Amended Complaint seeks a declaration that the debt "arises out of a willful and malicious injury to the property of Plaintiffs" does not change the court's conclusion. Section 523(a)(6) provides for one essential claim for relief and Plaintiffs plead that claim for relief even if they did not recite every term of § 523(a)(6) in that section.[13] The fact that the Plaintiffs may not have plead the § 523(a)(6) claim artfully is of no avail to the Debtor given the liberal notice pleading standard of Rule 8.

Summary judgment to Weidle Corporation is appropriate under the circumstances of this adversary. The modern era of notice pleading provided by the Federal Rules of Civil Procedure only requires notice of the claim and the Amended Complaint provided the Debtor with notice of the claim under § 523(a)(6). The facts as determined by the State Court meet the elements of § 523(a)(6) by a preponderance of the evidence and there is no issue of material fact. Accordingly, the

---

**12.** The court is fully cognizant of the clarification of *Conley* concerning pleading sufficient facts to survive a Rule 12(b)(6) motion based on recent Supreme Court decisions and the debate in the lower federal courts about the meaning of those decisions. See *In re Williams,* 395 B.R. 33, 38–39 (Bankr. S.D.Ohio 2008) (reviewing the clarification of *Conley* in the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Erickson v. Pardus,* 551 U.S. 89,

127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). Under any interpretation of those decisions, the facts are more than sufficiently detailed in the Decision of the State Court which was incorporated into the amended complaint and this court, as explained, finds the Plaintiff sufficiently plead the legal elements of a § 523(a)(6) cause of action.

**13.** The Debtor's comparison to § 523(a)(4) is not analogous because, unlike § 523(a)(6), § 523(a)(4) has three distinct causes of action.

court rejects the Debtor's argument that the Plaintiffs are not entitled to summary judgment because they did not plead "injury to the entity" and finds that the debt to Weidle Corporation is nondischargeable under § 523(a)(6).

## IV. CONCLUSION

The Debtor and Defendant is granted summary judgment as to all relief sought by D. Scott Weidle and with respect to the § 523(a)(4) embezzlement cause of action of Weidle Corporation. Weidle Corporation is granted summary judgment as to the § 523(a)(6) cause of action. Accordingly, the State Court judgment owed to the Weidle Corporation is determined to be nondischargeable pursuant to § 523(a)(6). The court is simultaneously entering an order consistent with this decision.