ELECTRONIC CITATION:  2000 FED App. 0001P (6th Cir.)
File Name:  00b0001p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re:  GREGORY S. SARFF, | ) |
| Debtor. | ) ) ) |
| _____ | ) |
| THE SPRING WORKS, INC., | ) ) ) |
| Plaintiff-Appellant,<br>Cross-Appellee, | ) ) ) |
| v. | ) Nos. 99-8035, 99-8036 |
| GREGORY S. SARFF, | ) ) ) |
| Defendant-Appellee,<br>Cross-Appellant. | ) ) ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division at Columbus.
No. 97-50441, Adv. No. 97-0115.

Argued: November 3, 1999

Decided and Filed:  January 10, 2000

Before: MORGENSTERN-CLARREN, RHODES, and STOSBERG,
Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:**  Eugene R. Butler, BAKER & HOSTETLER, Columbus, Ohio, for Appellant. Mark Ditullio, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Eugene R. Butler, BAKER & HOSTETLER, Columbus, Ohio, for Appellant. Mark Ditullio, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

The state court awarded damages against Gregory Sarff and in favor of Spring Works, Sarff's former employer, for breach of a covenant not to compete, breach of contract, breach of duty of loyalty, misappropriation of trade secrets, and intentional interference with business relations. The state court also sanctioned Sarff for discovery violations and contempt for violating an injunction. After Sarff filed a chapter 7 bankruptcy petition, Spring Works filed this dischargeability proceeding under 11 U.S.C. § 523(a)(6). Applying collateral estoppel, the bankruptcy court granted partial summary judgment for Spring Works and partial summary judgment for Sarff, declaring parts of the state court judgment nondischargeable, but other parts dischargeable. In this appeal, both parties argue that the bankruptcy court's judgment was internally inconsistent. The Panel concludes that all of the state court judgment arose from the same conduct which the state court found was willful and malicious, and that the entire judgment is nondischargeable. Accordingly, the bankruptcy court's judgment is **affirmed in part and reversed in part**.

## I. ISSUE ON APPEAL

The issue on appeal is which parts of the state court judgment are nondischargeable under § 523(a)(6).

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the BAP. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497, 103 L. Ed.2d 879 (1989) (citations omitted). The bankruptcy court's order granting in parting and denying in part motions for summary judgment by both parties is a final order. *Belfance v. Bushey* (*In re Bushey*), 210 B.R. 95, 98 (B.A.P. 6th Cir. 1997).

Conclusions of law are reviewed de novo. *Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citing *In re Schaffrath*, 214 B.R. 153, 154 (B.A.P. 6th Cir. 1997)). A bankruptcy court's order granting summary judgment is reviewed de novo. *Myers v. IRS* (*In re Myers*), 216 B.R. 402, 403 (B.A.P. 6th Cir. 1997), *aff'd*, ___ F.3d ___, No. 98-3169 (6th Cir. November 17, 1999). The determination of the applicability of collateral estoppel is also reviewed de novo. *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir. 1999).

## III. FACTS

Spring Works holds a patent for and manufactures a specially designed spring. Sarff was employed by Spring Works as a sales person from February 2, 1993, through February 3, 1995, when Spring Works terminated his employment for aiding a competitor, National Spring. On February 9, 1995, Spring Works filed a complaint against Sarff in Franklin County Common Pleas Court, alleging breach of a non-competition agreement, breach of employment duties under common law, misappropriation of trade secrets and intentional interference with business relations. On February 16, 1995, Sarff consented to the entry of an injunction prohibiting him from violating the non-competition agreement for two years and preventing him from disclosing any trade secrets.

On June 12, 1995, Spring Works filed a motion for contempt against Sarff for violating the injunction. On October 4, 1995, a state court magistrate conducted a trial on the contempt and injunctive relief issues and made specific findings of fact regarding Sarff's conduct. The magistrate found that Sarff had violated the injunction, misappropriated trade secrets, interfered with Spring Work's business relationships and breached his duty of loyalty. The state common pleas court adopted the magistrate's findings on January 9, 1996. These findings were upheld by the state appellate court. *Spring Works v. Sarff*, 1996 Ohio App. Lexis 2560 (June 20, 1996).

Sarff filed bankruptcy on January 17, 1997. In February, 1997, Spring Works filed an adversary proceeding under 11 U.S.C. § 523(a)(4) and (6). The bankruptcy court terminated the automatic stay to allow Spring Works to proceed with the state court action to determine damages. The state court then entered a judgment in favor of Spring Works.

This judgment consisted of: $20,789.79 in compensatory damages for breach of the covenant not to compete, interference with business relationships and misappropriation of trade secrets; $5,000 in punitive damages for the theft of springs and other overt acts; a $250 fine for violating the injunction; a $2,000 sanction for redacting information from discovery documents; and $38,708.22 in compensatory damages for breach of the duty of loyalty.

Both Spring Works and Sarff moved for summary judgment in the bankruptcy court based on the state court findings. The court awarded partial summary judgment to both Spring Works and Sarff. The bankruptcy court held that the award of compensatory damages for breach of the duty of loyalty was dischargeable but that the balance of the judgment was nondischargeable under 11 U.S.C. § 523(a)(6). Both Spring Works and Sarff appealed the bankruptcy court's determination. Spring Works argues that the bankruptcy court erred in holding that the compensatory damages are nondischargeable but correctly found that the balance of the state court judgment is nondischargeable. Sarff argues that the bankruptcy court correctly found that the compensatory damages are dischargeable but erred in finding that the remainder of the judgment is nondischargeable.

## IV. DISCUSSION

A. Collateral Estoppel

The Supreme Court has held that the doctrine of collateral estoppel is applicable in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 658, 112 L. Ed.2d 755 (1991). "The doctrine of collateral estoppel 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Markowitz,* 190 F.3d at 461 (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).

> Collateral estoppel requires "that 'the determination of a factual or legal issue in a judgment is conclusive in subsequent litigation if it was "actually litigated and determined," and the determination was essential to the judgment.'" *Corzin v. Fordu* (*In re Fordu*), 209 B.R. 854, 862 (B.A.P. 6th Cir. 1997) (quoting *Shelar v. Shelar*, 910 F. Supp. 1307, 1312 (N.D. Ohio 1995)). The Sixth Circuit has held that the application of collateral estoppel in a nondischargeability action depends upon whether the applicable state law

would give collateral estoppel effect to the judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir. 1997).

In order to successfully assert collateral estoppel under Ohio law, a party must plead and prove the following elements: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649, 58 L. Ed.2d 552 (1979).

*Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 388 (B.A.P. 6th Cir. 1998).

Both Sarff and Spring Works were parties in the state court action and it was fully litigated. Neither party has asserted that any of the magistrate's factual findings or conclusions of law were not necessary to the state court judgment. The bankruptcy court properly determined that it was precluded from relitigating any of the facts and conclusions of law involved in the state court judgment to the extent that they are identical in a dischargeability proceeding.

Section 523(a)(6) provides that a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court has held that a debt is nondischargeable under § 523(a)(6) if it results from an act with "intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 977, 140 L. Ed.2d 90 (1998). The Sixth Circuit recently interpreted *Geiger*, holding "that unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it', he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464 (internal citation omitted). Therefore, if the state court found that Sarff intentionally injured Spring Works, the bankruptcy court was required under the doctrine of collateral estoppel to hold the debt nondischargeable. *Abbo v. Rossi, McCreery & Assocs. (In re Abbo)*, 168 F.3d 930, 932 (6th Cir. 1999).

B.  Summary Judgment

Bankruptcy Rule 7056 governs summary judgment in adversary proceedings. Summary judgment is appropriate where there are no genuine issues of material fact and

the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56; FED. R. BANKR. P. 7056. According to the Sixth Circuit,

> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Gibson v. Gibson* (*In re Gibson*)*,* 219 B.R. 195, 198 (B.A.P. 6th Cir. 1998) (quoting *Hall v. Tollett,* 128 F.3d 418, 421-22 (6th Cir. 1997) (internal citations omitted)).

Collateral estoppel required the bankruptcy court to apply the state court's factual findings. There were no genuine issues of material fact. Therefore, summary judgment was appropriate.

C. Section 523(a)(6)

The bankruptcy court held nondischargeable pursuant to § 523(a)(6) the awards of $20,789.89 in compensatory damages and $5,000 in punitive damages for misappropriation of trade secrets and interference with business relations, and the awards of $250 and $2000 in sanctions. However, the bankruptcy court also held dischargeable the award of $38,708.89 in compensatory damages for breach of the duty of loyalty. On appeal, Spring Works argues that the $38,708.89 award should be held nondischargeable because it stems from the same willful and malicious conduct as the other damage awards. Sarff argues that the bankruptcy court erroneously concluded that the state court found willful and malicious conduct and that the entire judgment should be dischargeable.

1. The magistrate's findings of fact and conclusions of law.

The magistrate found that Sarff competed with Spring Works while still employed by Spring Works. Sarff, through his corporation, GSS Enterprises, Inc., lent National

money to purchase office and production equipment. (10/4/1995 decision at 5.) Sarff purchased a phone system for National. Sarff referred Rob Travis of Reotemp, a customer of Spring Works, to National and Travis ordered 15,000 springs from National. Sarff and another defendant stole at least 100 springs and packaging boxes from Spring Works to send a sample to Travis. (10/4/1995 decision at 7.)

The magistrate further found that after Spring Works terminated Sarff's employment, Sarff continued to compete with Spring Works. On February 16, 1995, Sarff voluntarily entered into a permanent injunction prohibiting him from competing with Spring Works. However, after entering into the injunction, Sarff maintained an office at National, paid National's bills, and continued to loan money to National. (10/4/1995 decision at 8.) Sarff also continued to solicit business for National. (10/4/1995 decision at 9.)

The magistrate held:

The evidence clearly and convincingly shows that both Sarff and [co-defendant] Snyder violated their covenants not to compete. Not only did they conspire to open a competing company while enjoying the benefits of their employment with [Spring Works], but they stole springs, boxes and customers from their employer to further their new enterprise.

(10/4/1995 decision at 14.)

Further, with regard to Sarff, the magistrate held:

he was a very active part of National, providing names of The Spring Works' customers to Brewer and making calls himself to new prospects. His explanation that he is nothing more than a creditor was found by the Magistrate to be completely without merit. His contempt for Mr. Weil [the owner of Spring Works] was readily apparent.

(10/4/1995 decision at 15-16.)

The magistrate also found that Sarff "purposely redacted, from his bank records which were provided to [Spring Works] during the discovery process, evidence of money he lent National in at least the sum of $2,000." (10/4/1995 decision at 16.)

His conduct since February 16, 1995 when he entered into the injunction agreement have [sic] been reprehensible. It is the Magistrate's conclusion that he has violated it nearly every day. . . . The Magistrate specifically finds that he has both invested in and participated in the day to day operations of National in contempt of the injunction Order.

(10/4/1995 decision at 16.)

The magistrate then held Sarff in contempt and imposed a ten day sentence and a $250 fine. (10/4/1995 decision at 20. See also 12/31/1996 order at 1.) The magistrate also awarded $2,000 as a sanction for redacting bank records during discovery. (10/4/1995 decision at 20.) Later, on a show cause order, the magistrate held, "Although no stay was ever granted and the action of this Magistrate was affirmed by both the trial court and the Court of Appeals, the Defendant Sarff still has made no voluntary payment to [Spring Works]. The only amount collected ($446.62) was through two garnishment proceedings." (12/31/1996 Order at 1-2.) The magistrate again found "Sarff in contempt for both failing to pay the $2,000 sanction and for failing to appear for his show cause order." (Id.)

2. The magistrate's findings of fact and conclusions of law mandate a finding that the state court judgment is nondischargeable in its entirety under § 523(a)(6).

Under *Geiger*, damages for a breach of contract can be nondischargeable under § 523(a)(6). *Salem Bend Condominium Assoc. v. Bullock-Williams* (*In re Bullock-Williams*), 220 B.R. 345 (B.A.P. 6th Cir. 1998). The plaintiff must, however, show more than just a "knowing breach of contract" and must prove that the defendant "intended to cause harm by" breaching the contract. *Id.* at 347. An intent to harm exists when the defendant "desires to cause consequences of his act, or . . . believes that the consequences of his action are substantially certain to result from it." *Markowitz*, 190 F.3d at 464 (citation omitted). Accordingly, if the magistrate's findings establish that Sarff desired to cause an injury to Spring Works or believed that the injury to Spring Works was substantially certain to result from his actions, then the state court damage awards are nondischargeable.

The court in *Novartis v. Luppino* (*In re Luppino),* 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998) explained, "An ordinary tort or breach of contractual or statutory duty generally is not sufficient to deny discharge under subsection (6) without some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code." Luppino, the debtor, was employed by Ciba-Geigy as Director of Data Processing, a managerial level job. Part of Luppino's duties included determining the need for computer equipment and making recommendations to his superiors regarding lease terms for the

equipment. For seven years, while Luppino was employed by Ciba-Geigy, he accepted bribes from NEFC for providing NEFC with information which assisted NEFC in bidding and obtaining leasing business from Ciba-Geigy. When Ciba-Geigy discovered Luppino's activities, it terminated his employment and brought a state court cause of action. The state court jury awarded damages based on its findings that Luppino received commercial bribes and breached his duty of loyalty.

In deciding whether the judgment was nondischargeable, the bankruptcy court noted that the case involved neither embezzlement nor larceny.

> Actual malice (intent to inflict harm on Ciba-Geigy) was not a necessary element of the causes of action asserted by Ciba-Geigy against Luppino in the State Court Action. Even if the receipt of commercial bribes and betrayal of state law duties of employee loyalty could be said to necessarily inflict economic damage on an employer . . . the creditor must allege and prove additional, aggravating facts and circumstances sufficient to give rise to an inference of actual malice[.]

*Luppino*, 221 B.R. at 700. The bankruptcy court then held that the employer had not shown aggravating circumstances warranting an inference of malice. However, the court cited *In re Blankfort*, 217 B.R. 138 (Bankr. S.D.N.Y. 1998), where "the debtor's persistent, blatant and willful violation of court orders enjoining the underlying conduct" warranted an inference of malice. *Luppino*, 221 B.R. at 700, n.3.

Although Sarff relies on Luppino in this appeal, it does not support his position. In the present case, the state court made factual findings which warrant the inference of malice required for a finding that the debt is nondischargeable under § 523(a)(6). Unlike *Luppino*, the present case does involve wrongful taking because the state court found that Sarff took both springs and customers from his employer. Furthermore, some of the punitive damages required malice as an element. Finally, like *Blankfort*, this case involves continuing violations of an injunction.

The bankruptcy court examined the state court judgment and found, "The magistrate's ruling demonstrates that Sarff's actions and intent to injure [Spring Works] were intentional, and precludes further inquiry by this Court into the dischargeability of the resulting debt." *Sarff*, Slip Op. at 9. The bankruptcy court held, "There is no question that Sarff, both individually and in concert with the other defendants in the state court action, willfully and maliciously caused injury to [Spring Works] by misappropriating trade secrets

and interfering with business relations." The bankruptcy court noted that the state court's award of punitive damages further indicated that the state court found that Sarff acted with malice. *Id.* at 10. Accordingly, the bankruptcy court held that the $20,789.89 compensatory damages were nondischargeable under § 523(a)(6).

The bankruptcy court also held that the $5,000 punitive damages award was nondischargeable under § 523(a)(6) because, "Punitive damages are recoverable under Ohio law upon proof of actual malice[.]" *Sarff*, Slip Op. at 11 (citing *Columbus Fin., Inc. v. Howard*, 327 N.E.2d 654 (Ohio 1975)). The Sixth Circuit has held that "Section 523(a)(6) 'does not distinguish between debts which are compensatory in nature and those which are punitive.'" *Abbo*, 168 F.3d at 931 (quoting *In re Miera*, 926 F.2d 741, 745 (8th Cir. 1991)). Punitive damages stemming from the same "willful and malicious injury" as a nondischargeable compensatory damages judgment are likewise nondischargeable. *Id.*

The bankruptcy court properly determined that both the compensatory damages for interference with business relations and misappropriation of trade secrets and the punitive damages were nondischargeable. The state court's award of punitive damages is indicative of a finding of malice. In fact, the magistrate specifically stated that Sarff's contempt toward the president of Spring Works was evident. Further, the continuing violations of the injunction is an aggravating circumstance which warrants an inference of malice. The bankruptcy court's order finding these debts nondischargeable is affirmed.

However, the bankruptcy court also held that the $38,708.22 compensatory award based on Sarff's breach of his common law fiduciary duty as an employee of Spring Works was dischargeable. The magistrate held that because Sarff breached his duty of loyalty he was not entitled to receive compensation for his employment during the time that he was improperly competing with Spring Works. The bankruptcy court held that Spring Works had not proven that the $38,708.22 compensatory damages was nondischargeable under § 523(a)(6) because Spring Works had not "met its burden of adequately connecting this award to actual damages suffered from Sarff's willful and malicious conduct[.]" *Sarff*, Slip Op. at 14.

Spring Works argues that the same evidence showing the intentional interference with business relations and violation of the noncompetition agreement supports a finding that the compensatory award for breach of the duty of loyalty is nondischargeable. Even Sarff admits that the bankruptcy court's decision is internally inconsistent.

The record establishes that the award of compensatory damages for the breach of duty of loyalty arose from the same actions as the other damage awards. Regarding the breach of the duty of loyalty, the magistrate considered the Restatement of Agency, which provides:

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a willful and deliberate breach of his contract of service, he is entitled to no compensation even for properly performed services for which no compensation is apportioned.

(2/27/1998 decision at 6 (quoting Restatement Agency 2d, § 469 (1958).)

The magistrate awarded compensatory damages based on her previous findings that Sarff's actions were a willful and deliberate breach of his contract of service. Those actions indicate an intention to cause Spring Works economic injury by taking customers from Spring Works. Accordingly, the compensatory damage award in the judgment is nondischargeable under § 523(a)(6). The part of the bankruptcy court's order finding the compensatory damages for breach of the duty dischargeable is reversed.

Finally, the bankruptcy court also held that the sanctions awarded to Spring Works were nondischargeable as they were ancillary to the nondischargeable damages. The magistrate awarded the $250 sanction based on a violation of the consent injunction. The magistrate based the award on Sarff's "reprehensible" conduct and his apparent contempt for the president of Spring Works. (10/4/1995 decision at 16.) The $2,000 discovery sanction was based on the magistrate's finding that Sarff intentionally redacted his bank records during discovery in an attempt to deceive Spring Works. (10/4/1995 decision at 16.) The magistrate's findings are binding on the bankruptcy court and support the bankruptcy court's determination that the sanctions are nondischargeable under § 523(a)(6). Sarff argues that the issue of dischargeability of these awards was moot because the awards were paid. However, the bankruptcy court correctly held "If Sarff has made payments towards the sanctions, as he alleges, such amount would certainly be credited towards satisfaction of this nondischargeable obligation." *Sarff*, Slip Op. at 13.

### 3. Reliance on counsel defense

Sarff argues that since the magistrate stated that the continuing injunction violations were based on the poor advice of counsel, those violations should not be considered

additional aggravating circumstances showing the malicious nature of his conduct. In her opinion on damages, the magistrate stated that she reincorporated her findings of fact made in the October 4, 1995 decision. However, the magistrate stated:

> [A]s flagrant as those violations seemed to be at that time, the Magistrate has come to believe through the testimony adduced at the damages hearing, through the actions of the Defendants since the time of the injunction order, and through other circumstances surrounding this case, . . . that the Defendants acted on very poor advice of counsel, making their actions less egregious than originally viewed.

(2/27/1998 decision at 3.)

The majority of cases have held that reliance on the advice of counsel is not a defense to § 523(a)(6). *Thompson v. Myers* (*In re Myers*), 235 B.R. 838, 846-47 (Bankr. D.S.C. 1998); *United Orient Bank v. Green*, 215 B.R. 916, 928-29 (S.D.N.Y. 1997); Peabey Assocs., ACP v. Haisfield (*In re Haisfield Enters. of Fla.*), 154 B.R. 803, 809 (Bankr. S.D. Fla. 1993) ("Where there are specific findings of willful, bad faith conduct by the party, reliance on the advice of counsel as a defense to a § 523(a)(6) claim must fail."). As one court noted, "If Congress had intended to provide debtors with an affirmative defense based on the advice of their attorneys it could have so expressly legislated." *Haeske v. Arlington* (*In re Arlington*), 192 B.R. 494, 500 (Bankr. N.D. Ill. 1996).

Even the cases that have allowed this defense have limited it to circumstances where the reliance was "reasonable" and there was evidence that the debtor acted in good faith after fully disclosing all facts to his counsel. *Security Bank of Hebron v. Wehri* (*In re Wehri*), 212 B.R. 963, 969 (Bankr. D.N.D. 1997); *Vaughn v. Murray* (*In re Murray*), 116 B.R. 473 (Bankr. E.D. Va. 1990).

In this case, the magistrate noted that Sarff relied on the poor advice of counsel when he continued to violate the injunction but the magistrate did not find that this reliance was in good faith. The magistrate stated that Sarff's reliance made the violations less egregious but did not find that the reliance completely excused the violations. The magistrate still awarded punitive damages for the theft of springs and overt acts of competition while employed by Spring Works, compensatory damages for the breach of the covenant not to compete, interference with business relations and misappropriation of trade secrets, and compensatory damages for the breach of the duty of loyalty. Further,

the magistrate did not reverse the sanctions that had been imposed for the continuing violations of the injunction. The bankruptcy court properly rejected Sarff's reliance on the advice of counsel defense.

## V. CONCLUSION

This is not the case of an "honest but unfortunate" debtor. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659, 112 L. Ed.2d 755 (1991). Sarff intentionally injured Spring Works by competing with it while he had a duty of loyalty to the company. He stole from Spring Works to aid a competitor and he repeatedly violated an injunction prohibiting him from competing against Spring Works. The bankruptcy court correctly held that it was bound to apply the state court findings to determine whether the judgment was nondischargeable under § 523(a)(6). The bankruptcy court correctly held that the state court's award of punitive damages and sanctions, the continuing injunction violations, and the state court's finding that Sarff had contempt for Spring Works warranted a finding of actual malice and an intent by Sarff to cause injury to Spring Works.

Accordingly, the portion of the bankruptcy court's order holding that the $20,789.89 compensatory damages and $5,000 punitive damages were nondischargeable under § 523(a)(6) is **AFFIRMED**. Likewise, the bankruptcy court's holding that the $250 and $2,000 sanctions were attributable to the intentional injury and were also nondischargeable under § 523(a)(6) is **AFFIRMED**. However, the bankruptcy court erroneously concluded that Spring Works had not shown that the state court judgment of $38,708.22 compensatory damages for breach of the duty of loyalty was connected to Sarff's conduct and intention to cause Spring Works injury. Accordingly, the portion of the bankruptcy court order holding that the $38,708.22 compensatory damage award is dischargeable is **REVERSED**.