In re Nicholas Matthew **GARRITANO**, Debtor.

**Humility of Mary Health Partners, Plaintiff,**

v.

**Nicholas Matthew Garritano, Defendant.**

Bankruptcy No. 07–40529.
Adversary No. 07–4084.

United States Bankruptcy Court, N.D. Ohio.

Aug. 13, 2009.

Richard G. Zellers, Richard G. Zellers & Associates, Canfield, OH, for Debtor.

## MEMORANDUM OPINION REGARDING TRIAL

KAY WOODS, Bankruptcy Judge.

This cause is before the Court after a bench trial on June 1–2, 2009. Debtor Nicholas Matthew Garritano ("Debtor") filed a voluntary petition pursuant to chapter 7 of the Bankruptcy Code on March 15, 2007. Debtor received his discharge on September 6, 2007.

On July 2, 2007, Plaintiff Humility of Mary Health Partners ("HMHP") filed Complaint of Humility of Mary Health Partners to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523 ("Complaint") (Doc. # 1). HMHP urges that the debt Debtor owes to HMHP is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6).

Debtor filed Answer of Defendant (Doc. # 6) on August 6, 2007, and Amended Answer and Counterclaim of the Defendant ("Amended Answer" or "Counterclaim") (Doc. # 13) on January 18, 2008. Debtor's Counterclaim asserts a breach of contract claim against HMHP. On January 31, 2008, HMHP filed Plaintiff's Reply to Counterclaim (Doc. # 14).

On November 19, 2008, the Court entered Trial Order (Doc. # 52), which set the instant adversary proceeding for trial on March 9, 2009. The Court entered Stipulated Order (Doc. # 75) on March 11, 2009, which continued the trial to June 1, 2009. Prior to the start of the trial, on June 1, 2009, the parties submitted Joint Stipulation of Facts and Stipulation to Authenticity of Exhibits ("Stipulation") (Doc. # 89). The Stipulation contained stipula-

tions as to certain facts and the admissibility of certain exhibits.[1]

At the conclusion of the trial the parties requested that they be allowed to submit post trial briefs in lieu of making closing arguments. The Court ordered the parties to submit post trial briefs on or before June 19, 2009. On June 19, 2009, Debtor filed Post Trial Brief ("Debtor's Brief") (Doc. # 90) and HMHP filed Plaintiff's Post–Trial [sic] Brief ("HMHP's Brief") (Doc. # 91) (collectively, the "Post Trial Briefs").

For the reasons set forth below, the Court finds: (i) $49,383.82 of the debt Debtor owes to HMHP to be non-dischargeable under 11 U.S.C. § 523(a)(6); and (ii) in favor of HMHP on Debtor's Counterclaim.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### I. FACTS

Having considered the Stipulation, testimony presented at trial, exhibits admitted into evidence, arguments of counsel, and Post Trial Briefs, the Court makes the following findings of fact and conclusions of law.

Debtor is a medical doctor with an OB/GYN practice in Canfield, Ohio. HMHP is an Ohio non-profit corporation that pro-vides health care services in the Mahoning Valley. During the relevant time period, Debtor provided medical services through an Ohio professional corporation under the name Dr. Nicholas M. Garritano, Inc. ("Practice"). Debtor was the sole shareholder of the Practice.

On December 12, 2005, HMHP and Debtor entered into Community Physician Employment Agreement (Professional Medical Services) ("Employment Agreement"), and HMHP and the Practice entered into Practice Management Agreement ("Management Agreement," collectively with Employment Agreement, the "Agreements"). Debtor signed the Employment Agreement in his personal capacity; he signed the Management Agreement in his capacity as President of the Practice.

The Employment Agreement provided that (i) HMHP would pay Debtor an annual salary of $250,000.00; and (ii) Debtor would assign all fees attributable to his professional services rendered under the Employment Agreement ("Fees") to HMHP. The Management Agreement provided for the Practice to bill for and collect the Fees, subtract allowed expenses ("Expenses"), and remit the balance of the Fees ("Balance") to HMHP. The Agreements went into effect on January 1, 2006. Under the Management Agreement, each month the Practice was required to (i) complete a Revenue and Expense Report ("Monthly Report"); and (ii) submit the Monthly Report to HMHP with a check for the Balance.

Because the Practice would not receive Fees in time to cover Expenses for January 2006, HMHP advanced Debtor $28,800.00 to cover such Expenses.

---

1. Although the parties stipulated to the "admission" of many exhibits into evidence, the Court construes the language to mean the parties stipulate to the admissibility of the referenced exhibits.

Debtor completed Monthly Reports for the months of January 2006 through March 2007. The Monthly Report for January 2006 showed a Balance of $8,723.56 due to HMHP. Although required to do so under the Management Agreement, the Practice did not submit a check to HMHP with the January 2006 Monthly Report. Debtor personally filled out and sent to HMHP all of the Monthly Reports. As calculated by Debtor in the Monthly Reports, the total Balance that should have been remitted to HMHP from January 2006 through March 2007 was $57,383.82. Despite the calculations in the Monthly Reports, Debtor sent only one check to HMHP—*i.e.* a check for $8,000.00 in October 2006. Thus, according to the Debtor's own calculations, the undisputed amount due to HMHP at the termination of the Agreements was $49,383.82 ($57,383.82 less $8,000.00).

On January 3, 2007,[2] HMHP sent a letter to Debtor, pursuant to which HMHP terminated the Agreements, without cause, pursuant to § 6.2 of the Employment Agreement and § 7.2 of the Management Agreement. Because HMHP terminated the Employment Agreement without cause, § 4.6 of the Employment Agreement is applicable. In part, it provides:

> In order to protect [HMHP] and [Debtor], upon termination of this [Employment] Agreement [Debtor] is required to purchase a single premium tail coverage policy.... If this [Employment] Agreement is terminated ... without cause under subsection 6.2 of this [Employment] Agreement, then [HMHP], at the time of the purchase of the single premium tail coverage policy, will fund

the entire amount of any required single premium tail coverage policy.

(Empl.Agr. § 4.6.)

Debtor obtained a quote of $150,925.71 from Preferred Professional Insurance Company ("Preferred Ins.") dated March 27, 2007, as the cost for a single premium tail coverage policy ("Tail Policy"). Debtor did not purchase a Tail Policy from Preferred Ins. or any other insurance company. HMHP did not fund the purchase of the Tail Policy.

HMHP asserts that Debtor failed to remit the Balance he owed HMHP. Moreover, HMHP asserts that Debtor took improper deductions when he calculated Expenses. Debtor denies these allegations and asserts that HMHP breached the Employment Agreement by failing to purchase a Tail Policy for him. HMHP responds that it did not breach the Employment Agreement because Debtor's purchase of the Tail Policy was a condition precedent to its funding obligation.

## II.  LAW AND ANALYSIS

A chapter 7 discharge does not discharge an individual from any debt specifically listed in § 523(a). *See* 11 U.S.C. § 523 (LexisNexis 2009). HMHP asserts that the debt Debtor owes to HMHP is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6). Debtor contends that none of these sections is applicable, and any debt Debtor owes HMHP should be discharged. For the reasons given below, the Court finds $49,383.82 of the debt Debtor owes to HMHP to be non-dischargeable.

Debtor asserts a counterclaim against HMHP for breach of the Employment Agreement. For the reasons stated below,

---

**2.** Although the letter is dated January 3, 2006, the Stipulation corrects the date of the letter as January 3, 2007. (Stip.¶ 51.)

the Court finds that HMHP did not breach the Employment Agreement.

### A. Debtor's Debt to HMHP

■ The Court will first deal with an argument raised—for the first time—in Debtor's Brief, which is: Debtor owes no debt to HMHP because the Practice—rather than Debtor—was obligated to HMHP for the Balance. (Debtor's Br. at 7–9.) This argument is wholly contrary to Debtor's testimony and the evidence. The Court finds that Debtor waived this argument by admitting liability. Debtor's filings and testimony admitted personal liability on the debt to HMHP. Moreover, Debtor's failure—during the entire pretrial and trial proceedings—to raise the defense that the asserted liability was owed by a separate entity precludes him from raising the issue after the trial's conclusion. From the date Debtor filed his schedules until nearly three weeks *after* the conclusion of trial, Debtor represented that he personally owed a debt to HMHP. Debtor never challenged his personal liability on the alleged debt to HMHP. Debtor never asserted as a defense that this debt was not his personal debt. For more than two years, Debtor (i) affirmatively represented that the debt was a personal liability (*See* Schedule F) and (ii) failed to assert that the debt was owed by the Practice.

### 1. Debtor's Schedules

On March 27, 2007, Debtor filed Schedules A–J (Main Case Doc. # 10). Debtor listed HMHP as a creditor with an unliquidated debt on Schedule F—Creditors Holding Unsecured Nonpriority Claims. Additionally, although Debtor listed the Practice as a Codebtor with a debt to Sky Bank on Schedule H—Codebtors, he did not list the Practice as having any liability to HMHP. Debtor listed HMHP as his creditor alone.

### 2. The Complaint and Amended Answer

On July 2, 2007, HMHP filed Complaint against Debtor, asserting that Debtor (not the Practice) was liable to HMHP for the Balance. On January 18, 2008, Debtor filed Amended Answer. In the Amended Answer, Debtor (i) admits that he was responsible for submitting the Monthly Reports (Am.Ans.¶ 11), and (ii) fails to include any defense that he had no personal liability for the Balance. Although Debtor "reserve[d] the right to assert any and all affirmative defenses it [sic] may discover throughout these proceeding[s]" (Am. Ans.¶ 32), a defense regarding lack of personal liability would have been apparent from the face of the Complaint rather than "discover[ed] throughout these proceedings." Debtor's failure to raise lack of personal liability, coupled with his admission that he was required to file the Monthly Reports (which was an obligation of the Practice in the Management Agreement), constitutes a waiver of this defense.

### 3. Debtor's testimony at trial

HMHP called Debtor as its first witness and questioned him as if on cross examination. During the course of his testimony, Debtor referred to obligations of the Practice as his personal obligations. Debtor not only referred to the Balance as a personal debt, he frequently blurred the lines between the Practice and himself.

When asked whether HMHP had the sole authority to bill and collect the Fees, Debtor stated, "I billed for and collected the accounts receivable. The hospital did not." (Trial Tr. June 1, 2009, at 10:11:33.)

HMHP's counsel questioned Debtor extensively about the Monthly Reports, which Debtor acknowledged that he filled

out and sent to HMHP. In inquiring about the Balance on the January 2006 Monthly Report, HMHP asked, "In January the numbers that you wrote in your handwriting show that you owe money to Humility of Mary, Right?" Debtor answered, "That's correct." (*Id.* at 10:51:10.) After going through each Monthly Report, HMHP's counsel summarized Debtor's obligation to HMHP as shown in the Monthly Reports and asked, "Whatever that number is . . . you still owed that amount of money to Humility of Mary at the end of the contract, right?" Debtor responded, "Yes, I admitted that to attorney Shoaff when they terminated my contract." (*Id.* at 10:59:17.) At the conclusion of Debtor's testimony, HMHP's counsel asked, "There's no dispute though that you collected revenue that was due to Humility of Mary, correct?" Debtor answered, "Correct." HMHP's counsel continued, "And you kept it all?" Debtor responded, "Correct." (*Id.* at 4:26:30.)

Moreover, when Debtor testified on his own behalf regarding the Counterclaim, he again admitted personal liability for the obligations under the Management Agreement. Debtor stated, "I've never denied that I' ve owed the hospital money. I've felt all along that I owed them some revenue." (Trial Tr. June 2, 2009, at 3:22:46.) Debtor further stated, "I needed to sit down with the hospital and their accounting department and my accountant and we would come up with a figure that I owed the hospital. If they paid the tail, I'd pay the hospital." (*Id.* at 3:26:05.) Debtor repeatedly admitted that he was personally liable to HMHP for the Balance collected during the term of the Agreements. Debtor admitted that he personally performed all of the responsibilities delegated to the Practice under the Management Agreement, *i.e.* filling out Monthly Reports, billing and collecting Fees, and sub-

mitting the Balance to HMHP, and that he did so in his personal capacity.

### 4. Post Trial Briefs

The parties requested that they be able to submit Post Trial Briefs in lieu of making closing statements. The Court ordered that the Post Trial Briefs (i) set forth facts each party deemed to be relevant, (ii) summarize the factual and legal issues, and (iii) contain citations to relevant case law and the Record. (*Id.* at 3:58:48.)

Debtor's Brief went beyond what the Court ordered to be in the Post Trial Briefs. Debtor's Brief raised an issue that was previously uncontroverted by the parties—namely, the Debtor's personal liability to HMHP. Debtor admitted his liability on the debt to HMHP in documents filed with this Court and in his testimony at trial. Although Debtor has consistently disputed the *amount* of the debt, he never challenged his personal liability on such debt. As a consequence, Debtor has waived this argument, and Debtor's personal liability on the debt to HMHP is not at issue.

### B. HMHP's § 523(a)(2)(A) Claim

██ Section 523(a)(2)(A) provides that a chapter 7 discharge does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (LexisNexis 2009). A creditor must prove four elements by a preponderance of the evidence to except a debt from discharge under § 523(a)(2)(A):

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the

creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998). The debtor's intent to deceive a creditor is determined under a subjective standard. *Id.* at 281.

■ HMHP not only failed to present any evidence of a misrepresentation by Debtor at the time the Agreements were entered into, HMHP's witnesses expressly testified that Debtor did not make any misrepresentations during negotiations of the Agreements. John Finizio, Jr. ("Finizio"), HMHP's Senior Vice–President of Business Development, testified about the initial discussions with Debtor regarding the Agreements. Finizio testified that HMHP required Debtor to allow HMHP to inspect his financial records. HMHP's counsel asked, "And did Dr. Garritano open up his books?" Finizio responded, "He did.... [HMHP] engaged SS & G who we used as a third party company to do these evaluations, and [Debtor] went through the process of providing SS & G with his financials." (Trial Tr. June 2, 2009, at 11:06:01.) On cross-examination Finizio was asked "When [Debtor] entered into the contract, did you believe that he or his accountant made any misrepresentations to you of his motives for entering into the contract or the financial data that was given you?" Finizio responded, "No." (*Id.* at 11:27:10.) Additionally, Criss Rhoads ("Rhoads"), HMHP's Director of Physician Network Development, also testified about the initial discussions with Debtor regarding the Agreements. On cross-examination Debtor's counsel asked, "He gave you all the financial documents; do you have any reason to believe that any of those discussions or documents he gave you

were misrepresentations or false?" Rhoads responded, "No." (*Id.* at 11:57:10.)

As a result, HMHP failed to show that Debtor made a material misrepresentation, and HMHP's claim under § 523(a)(2)(A) fails for lack of the essential element of a misrepresentation.

### C. HMHP's 11 U.S.C. § 523(a)(4) Claim

Section 523(a)(4) provides that a chapter 7 discharge does not discharge an individual from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (LexisNexis 2009).

### 1. Fraud or Defalcation

■ To satisfy the fiduciary capacity element of § 523(a)(4) in the context of fraud or defalcation, the fiduciary capacity must be based on "the existence of a pre-existing express or technical trust whose res encompasses the property at issue." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir.2005); *see also Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

HMHP presented no evidence of a pre-existing express or technical trust. As a consequence, HMHP's claim for fraud or defalcation while acting in a fiduciary capacity fails.

### 2. Embezzlement

■ Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir. 1996). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for

which it was entrusted, and the circumstances indicate fraud." *Id.* at 1173. Also, a creditor must prove the debtor's fraudulent intent in taking the creditor's property. *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 116 (6th Cir. BAP 2007). However, a creditor need not show an express misrepresentation or a misleading omission to establish circumstances that indicate fraud. *Id.* This is because "[f]raud comes in many sizes, shapes and shades of gray." *Id.*

■ HMHP introduced evidence at trial regarding (i) Debtor's alleged improper Expense deductions; (ii) Debtor's tardiness in submitting the Monthly Reports; (iii) Debtor's failure to turn over the Balance on a monthly basis to HMHP; and (iv) Debtor's financial sophistication. HMHP contends that these facts, together, show Debtor intended to defraud HMHP.

Debtor's counter argument is as follows: He asserts that the deductions he took as Expenses were consistent with the way he operated the Practice before the Agreements and with the way he conducts his medical practice today. Debtor alleges that he was late in filling out the Monthly Reports because (i) the Management Agreement was vague; (ii) he had to work with three different practice administrators at HMHP; and (iii) the Monthly Reports were difficult to complete. However, Debtor had no explanation for his failure to remit to HMHP the Balance he showed on the Monthly Reports.

The Court finds that HMHP has failed to show circumstances indicating fraud. Although Debtor may have breached the Management Agreement by taking unauthorized deductions as Expenses, the unrefuted evidence demonstrated that such deductions were consistent with Debtor's prior practices. Moreover, Debtors late Monthly Reports do not establish fraudulent intent because HMHP conceded that other physicians also submitted late reports without consequences. Taken as a whole, HMHP failed to show that the circumstances surrounding the alleged improper Expense deductions indicate fraud. Debtor's Monthly reports disclosed that he owed a Balance to HMHP; he failed or refused to turn over such Balance to HMHP. As a consequence, HMHP established that Debtor's failure to remit the Balance each month is a breach of contract; however, HMHP's evidence is insufficient to establish fraud. Because circumstances indicating fraud are required under § 523(a)(4) for a debt to be non-dischargeable as embezzlement, HMHP's claim also fails on this basis.

### 3. Larceny

■ Larceny is distinguishable from embezzlement in that the original taking must have been unlawful. Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 n. 3 (Bankr.N.D.Ohio 2003).

■ Larceny is not applicable in the instant case because HMHP failed to offer any evidence of an unlawful taking. As a result, HMHP has also failed to establish larceny under § 523(a)(4).

### D. HMHP's 11 U.S.C. § 523(a)(6) Claim

■ Section 523(a)(6) provides that a chapter 7 discharge does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (LexisNexis 2009). Thus, for a debt to be non-dischargeable, the injury must be both willful

and malicious. *See Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *and conjunctive nature of* 11 U.S.C. § 523(a)(6) (LexisNexis 2009).

▬ A willful injury is one that is done voluntarily, intentionally, or deliberately. *Markowitz*, 190 F.3d at 464. "As such, only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury." *Id.* The Sixth Circuit Court of Appeals has specifically held that "unless 'the actor desires to cause the consequences of his act, or ... believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* (internal citations omitted).

▬ A malicious injury is one that is done "in conscious disregard of one's duties or without just cause or excuse...." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986).

▬ Damages arising from breach of contract are non-dischargeable under 11 U.S.C. § 523(a)(6) when the debtor intended to cause the plaintiff harm through the breach of contract. *See Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 626 (6th Cir. BAP 2000). The plaintiff must, however, show more than just a knowing breach of contract; plaintiff must also prove that debtor intended to cause him harm by breaching the contract. *Id.* *See also Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (stating that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury" and a "knowing breach of contract" alone should not give rise to nondischargeability). A debtor in-

tends to cause an injury when he "desires to cause the consequences of his act, or ... believes that the consequences are substantially certain from it." *Markowitz*, 190 F.3d at 463.

▬ For the months of January 2006 through March 2007, Debtor completed and submitted Monthly Reports to HMHP. Debtor understood his obligation to remit to HMHP the Balance shown on each Monthly Report. Each Monthly Report showed that Debtor owed a Balance to HMHP. At the end of the Agreements, Debtor's own calculations—based on the Monthly Reports—showed that he should have remitted a total Balance of $57,383.82 to HMHP.

Debtor admitted, "I've never denied that I've owed the hospital money. I've felt all along that I owed them some revenue." (Trial Tr. June 2, 2009, at 3:22:46.) However, other than a one time payment of $8,000.00 in October 2006, Debtor made no payments to HMHP over the entire course of the Agreements. Debtor failed to articulate *any* justification for his failure to remit the Balance to HMHP with each Monthly Report. As a result, by his own admission, Debtor wrongfully withheld the Balance of $49,383.82 from HMHP.

Although an injury arising from breach of contract is generally not willful and malicious, Debtor's actions in unjustifiably withholding the Balance from HMHP constitutes a willful and malicious injury. Whether or not Debtor subjectively intended to cause HMHP harm by withholding the Balance, Debtor was substantially certain that withholding the Balance would cause HMHP harm. Debtor was obligated under the Agreements to turn over the Balance on a monthly basis to HMHP; Debtor failed to do so without just cause or excuse.

Indeed, Debtor simply kept the entire Balance (with the exception of the one $8,000.00 payment). The Monthly Reports demonstrated that Debtor owed HMHP a Balance each month but he failed, without justification, to remit such Balances to HMHP. HMHP asserts that Debtor took improper deductions as Expenses, which Debtor disputes. The Monthly Reports *include* these disputed deductions. Thus, Debtor can make no argument that he withheld the Balance because he didn't know if all of the Expenses were allowable. The Balance Debtor showed on each Monthly Report is the *undisputed* amount he owed HMHP. If HMHP is correct and certain deductions were improper, Debtor would owe more—not less—to HMHP. As a consequence, $49,383.82, which is the unpaid Balance due to HMHP based on Debtor's Monthly Reports (*i.e.*, $57,383.82 less the $8,000.00 payment), is non-dischargeable under § 523(a)(6) as a willful and malicious injury.

HMHP presented evidence of alleged improper Expense deductions that Debtor took over the course of the Agreements. HMHP failed to carry its burden of proof by the preponderance of the evidence that Debtor took such deductions to cause HMHP injury. Debtor asserts that all of the deductions were proper business expenses. Although some deductions do not appear to have been authorized by the Management Agreement, it seems that Debtor may merely have been mistaken in his belief that such deductions were appropriate. Accordingly, although some Expense deductions may have been improper and, thus, a breach of the Agreements, HMHP failed to establish that Debtor's alleged improper Expense deductions constitute a willful and malicious injury. As a consequence, § 523(a)(6) does not except from discharge additional damages HMHP may have against Debtor based on improper Expense deductions.

### E. Debtor's Counterclaim of breach of the Employment Agreement

Debtor asserts that HMHP breached the Employment Agreement by failing to purchase a Tail Policy for Debtor at the end of the Employment Agreement. HMHP asserts that (i) it was only required to fund (*i.e.*, pay for) the Tail Policy after it was purchased by Debtor; and (ii) because Debtor never purchased the Tail Policy, this contract provision is not applicable.

The Employment Agreement is governed by Ohio law. Generally, to establish a breach of contract claim in Ohio, the movant must demonstrate the following: (1) the existence of a binding contract, (2) the breaching party's failure to perform its contractual obligations without legal excuse, (3) the non-breaching party's substantial performance of the contract and (4) damages suffered by the non-breaching party as a result of the breach. See e.g., *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 593 N.E.2d 316, 321 (1991); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 661 N.E.2d 218, 226 (1995). "Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Corsaro v. ARC Westlake Village, Inc.*, 2005 Ohio 1982, ¶ 20 (2005). A condition precedent is a condition that must be satisfied before a party is required to perform under an agreement. *See Webb v. Pewano Ltd.*, 2009 Ohio 2629, ¶ 15, 2009 WL 1581135 (2009).

Debtor cannot prevail on his Counterclaim because he failed to (i) comply with a condition precedent and/or (ii) prove any damages resulting from the alleged breach.

The language of the Employment Agreement provides:

> In order to protect [HMHP] and [Debtor], upon termination of this [Employment] Agreement [Debtor] is required to purchase a single premium tail coverage policy.... If this [Employment] Agreement is terminated ... without cause under subsection 6.2 of this [Employment] Agreement, then [ HMHP], at the time of the purchase of the single premium tail coverage policy, will fund the entire amount of any required single premium tail coverage policy.

(Empl.Agr. § 4.6.)

Debtor misconstrues HMHP's obligation to *purchase* the Tail Policy when the Employment Agreement requires HMHP to *fund* the Tail Policy. The words "purchase" and "fund" are not interchangeable. "Purchase" means "[t]he act or instance of buying." BLACK'S LAW DICTIONARY 1270 (8th ed.2004). "Fund" is defined as "[t]o furnish money to (an individual, entity, or venture), esp. to finance a particular project." *Id.* 697. Debtor had the obligation to *purchase;* HMHP had the obligation to *fund.* As a consequence, Debtor was required to purchase the Tail Policy upon the termination of the Agreements, at which time HMHP's obligation to fund the purchase of the Tail Policy would arise.

There is an explicit order of events in the Employment Agreement. Debtor was first required to purchase the Tail Policy, upon which event, HMHP was required to fund such purchase. The purchase of the Tail Policy by Debtor was a condition precedent to HMHP's obligation to "fund" the purchase of the Tail Policy. As a consequence, because Debtor never purchased the Tail Policy, HMHP was never obligated to fund the purchase of the Tail Policy.

Moreover, even if Debtor could have shown that HMHP breached the Employment Agreement by failing to pur-

chase the Tail Policy, Debtor did not prove that he was damaged by such breach. Debtor's only evidence of damages is the cost of the Tail Policy, as shown by the Preferred Ins. quote dated March 27, 2007. Debtor admitted that he did not purchase any Tail Policy and, thus, does not have any out-of-pocket costs that he can assert as damages. Debtor did not produce any evidence of damages as a result of HMHP's alleged breach. Therefore, any damages arising from HMHP's alleged breach are speculative, at best, and cannot be awarded.

### III.  CONCLUSION

For the reasons given above, the Court finds that (i) Debtor is personally liable on the debt to HMHP and (ii) HMHP proved by a preponderance of the evidence that $49,383.82 of the debt Debtor owes HMHP is non-dischargeable under § 523(a)(6) as a willful and malicious injury.

Additionally, the Court finds that Debtor failed to prove the Counterclaim.

An appropriate order will follow.

### ORDER REGARDING TRIAL

For the reasons set forth in this Court's Memorandum Opinion entered on this date, the Court hereby finds and holds that: (i) Debtor Nicholas Matthew Garritano ("Debtor") is personally liable on the debt to Plaintiff Humility of Mary Health Partners ("HMHP"); and (ii) HMHP proved by a preponderance of the evidence that $49,383.82 of the debt Debtor owes HMHP is non-dischargeable under § 523(a)(6) as a willful and malicious injury.

Additionally, Debtor failed to prove his Counterclaim against HMHP for breach of contract.